# CHARLESTON

## GRIFFITH v. AMERICAN COAL CO..

Submitted February 4, 1915.    Decided February 23, 1915.

1. MASTER AND SERVANT—*Injury to Servant—Complaint—Negligence —Employment of Infant.*

   A count in a declaration for personal injuries based on negligence in employing a boy under fourteen years of age in a coal mine, inhibited by statute, is not bad on demurrer, for failure to allege in terms that such illegal employment was the natural and proximate cause of plaintiff's injuries. It is prima facie negligence to so employ an infant within the prohibited age. (p. 688).

2. EVIDENCE—*Admissibility—X-Ray Radiograph.*

   X-ray radiograph or shadow pictures are admissible in evidence when shown to have been made with trustworthy instruments, and properly taken, in connection with the evidence of witnesses expert in the use of such instruments and skilled in making, reading and interpreting such pictures. (p. 689).

3. DAMAGES—*Personal Injuries — Instructions — Decreased Earning Capacity.*

   Plaintiff's instruction to the jury, number 1, on the theory of permanent injuries, bodily pain and suffering endured by him, and likely to be endured, and disfigurement, and on the theory of decreased earning capacity due to such permanent injuries, is not bad for lack of evidence justifying the same, nor as authorizing the jury to include in their verdict damages for decreased earning capacity during plaintiff's minority, said instruction in terms limiting all damages on account of decreased earning capacity to a time after plaintiff shall have reached his majority. (p. 690).

4. TRIAL—*Instructions—Ignoring Issues.*

   On the trial of such an action an instruction to the jury proposed by defendant, ignoring plaintiff's theory, supported by sufficient evidence, that at the time of his employment and injuries he was an infant under fourteen years, and his employment illegal and negligent, is properly rejected. (p. 691).

5. MASTER AND SERVANT—*Injury to Infant Employe—Contributory Negligence.*

   To sustain the defense of contributory negligence in such cases, it must be shown not only that the infant employee had capacity to understand and appreciate his instructions and warning against the dangers incident to his unlawful employment, but that he in fact did understand them, and that his supposed negligent act was not

such as the statute was intended to provide against, but also that he was possessed of such unusual wisdom and sagacity as to take him out of the class of youths under fourteen years which the statute was intended to protect; and instructions proposed by defendant in this case propounding a different rule of liability were properly rejected. (p. 691).

6. TRIAL—*Special Interrogatories.*
   So also special interrogatories proposed by defendant in this case, assuming certain facts, but not comprehending all other facts necessary to constitute a complete defense of contributory negligence, were properly denied. (p. 692).

7. EVIDENCE—*Date of Birth—Account Books—Testimony of Physician.*
   On the trial of such action the account books or other books of a practicing physician or surgeon, containing entries regularly made in due course of business, and who attended the mother at the birth of her child, and the oral evidence of such practitioner verifying such record, are legal and competent evidence to go to the jury on the question of the date of the birth of such infant employee. (p. 692).

8. NEW TRIAL—*Grounds—Newly Discovered Evidence.*
   The discovery of such legal and competent evidence after the trial of this case, considered in connection with other evidence offered on the motion of defendant for a new trial, and considered also in connection with the evidence adduced on the trial, and the proof of due and reasonable diligence on the part of defendant to discover such new evidence, as shown by the record, constituted good ground for setting aside the verdict and awarding defendant a new trial. (p. 694).

Error to Circuit Court, Mercer County.

Action by Perry Griffith, an infant, etc., against the American Coal Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Stokes & Sale,* and *Lawson Worrell,* for plaintiff in error.

*A. W. Reynolds,* and *Sanders & Crockett,* for defendant in error.

MILLER, JUDGE:

Writ of error by plaintiff to the judgment of the circuit court of Mercer County, setting aside the verdict of the jury and awarding defendant a new trial.

The judgment complained of shows defendant's motion was based on numerous grounds, but that the sole ground on which the new trial was awarded was that of newly discovered evidence. In this court defendant relies on all errors assigned. Plaintiff in error challenges the correctness of the judgment based on newly discovered evidence, and insists that the trial court committed no error in its other rulings. We will first consider and dispose of defendant's points of error, and leaving to be considered lastly the ground of newly discovered evidence challenged by plaintiff and relied on for reversal.

First, that the court should have sustained the demurrer to the declaration and to each count thereof. Plaintiff was employed as a trapper in defendant's coal mine. The declaration is in four counts. In brief, the first count charges negligence in the employment of plaintiff, a boy under fourteen years of age, in violation of the statute; the second, that when employed and at the time of his injuries plaintiff was an inexperienced infant, and was negligently placed at a dangerous place of work without proper instructions; the third, that after being so employed as charged in the second count, he was taken from the first place of employment and put at another and more dangerous one without any instructions; and the fourth, that defendant did not use reasonable care and diligence in providing plaintiff with a reasonably safe appliance, namely, a certain door at which he was placed to work.

On this hearing no defects are pointed out in the second, third and fourth counts, and we perceive none. But the sufficiency of the first count, on which alone, it is contended, the verdict could stand, is challenged. It is said that notwithstanding the statute prohibits the employment in a coal mine of a boy under fourteen years of age, such employment is not per se negligence, and that upon the principles of *Norman* v. *Virginia-Pocahontas Coal Co.*, 68 W. Va. 405, and *Dickinson* v. *Stuart Colliery Co.*, 71 W. Va. 325, it is not sufficient simply to allege employment in violation of the statute; but that it should also be alleged and proven that such violation of the statute was the natural and proximate cause of the injury complained of. We think the count good. One substantially like it was approved in *Daniel* v. *Big Sandy*

*Coal & Coke Co., 68 W. Va. 490.* Moreover, this count, among
other things, alleges that plaintiff in the due course of his
employment was permitted to work in a dangerous and
hazardous place, and was struck by a certain door in the mine
and as a result was mashed, injured internally and otherwise.
While there is no allegation in terms that such illegal em-
ployment was the natural and proximate cause of plaintiff's
injuries, yet enough is alleged to show that the dangerous
character and places of the work were those against which
the statute was intended to protect plaintiff, rendering such
breach of the statute plainly the proximate cause of his in-
juries. We must overrule the point of error.

The second point is that the court erred in admitting the
X-ray radiograph or shadow picture of plaintiff's body made
by Dr. E. T. Brady, May 13, 1914, and in connection there-
with his oral evidence as to what the radiograph showed, and
particularly his opinion evidence as to the extent of plain-
tiff's injuries, the basis of such opinion not having been prop-
erly laid. It is said that witness knew nothing of the injury
except what he could read from the radiograph, and that it
was not shown to have been properly taken, and not shown
to be correct; that to make either picture or evidence admis-
sible witness' knowledge must be shown, and that the instru-
ment used in making the picture was trustworthy and the
picture properly taken. The authorities cited and relied on
for the general proposition covered by the objection and for
its application to the facts in the case at bar are 1 Wigmore
on Evidence, section 795; 22 Am. & Eng. Ency. Law, (2nd
ed.) 775; *Electric Railroad Co.* v. *Spence,* 213 Ill. 220;
*Chicago City Ry. Co.* v. *Smith,* 226 Ill. 178; *City of Geneva*
v. *Burnett,* 65 Neb. 464; *Carlson* v. *Benton,* 66 Neb. 486.

The evidence of Dr. Brady shows him to be not only a
physician of learning and of long and varied experience, but
also that he is an expert in the use of X-ray machines, and
in the making and interpreting of radiograph or X-ray pic-
tures; and, moreover, that his machine used in making the
picture introduced in evidence and interpreted by him was
one of the best machines made; that at the time he took the
picture the machine was working *satisfactorily,* and that
the picture was taken under proper circumstances and con-

ditions of the plaintiff's body to make an accurate picture, and witness swore positively that the picture represented correctly the pelvis and pelvic region of plaintiff's body at the time it was taken, and that in taking the picture the instrument was placed at a proper angle to show the ilium and the portion of the pelvis of plaintiff. He was asked by the court: ''Q. What was the condition of the light, Doctor, at the time? A. I have already stated, Judge, that the·light was working perfectly satisfactorily. That means there was no deviation— no change.'' True, other expert physicians undertook to interpret the picture differently from Dr. Brady and gave evidence of the external appearances of plaintiff's body, and the physical tests to which they subjected him, tending to contradict Dr. Brady. But these conflicts were all for the jury to weigh and consider in reaching their verdict. We find no error in the rulings of the court on this evidence, and must negative the point.

The third point is that the court misdirected the jury by plaintiff's instructions numbered 1, 2, 3, 4 and 6, and particularly number 1. Respecting number 1, covering, (a) the question of the plaintiff's permanent·injury, (b) bodily pain, suffering and mental anguish endured, or that must necessarily be endured in the future as a result of plaintiff's injuries, (c) respecting plaintiff's earning capacity, and in not limiting his recovery on that account to a time subsequent to reaching his majority, and .(d) covering the question of any disfigurement of plaintiff's person and injury to his health due to his alleged injuries. The objection to this instruction is that there was no sufficient evidence on which to base such an instruction, and that an infant is not entitled to his earnings during his minority.· Citing for the latter proposition, *Comer* v. *Ritter Lumber Co.,* 59 W. Va. 688, syl. 2.

We have carefully read and considered the evidence on all these points and can not agree with counsel that it did not warrant the instruction. We are not passing on the weight and sufficiency of the evidence; but in our opinion it justified the instruction on the question of the permanency of the injury, the bodily pain and suffering endured, and likely to be endured by plaintiff, and his disfigurement. And on the question of plaintiff's earning capacity during his minority

the instruction plainly excludes all such earnings. It says that in estimating the damages the jury may consider "whether or not the injury is permanent and will impair the future earning capacity of Perry Griffith *after he becomes of age.*" The points made as to instructions numbered 2, 3, 4 and 6, are not urged. We see no error in them, and so we deny the third proposition in its entirety.

The fourth point or proposition urged is, that the court erred in rejecting defendant's instructions numbered 5, 7, 8 and 10. We have examined all these instructions. As did instruction number 1, rejected, in *Honaker* v. *Coal Co.*, 71 W. Va. 177, number 5, ignores plaintiff's theory that at the time of his injuries he was under fourteen years of age. His employment was prima facie negligence. This omission renders the instructions bad. *Honaker* v. *Coal Co.; Norman* v. *Virginia-Pocahontas Coal Co.; Daniel* v. *Big Sandy Coal & Coke Co., supra; Burke* v. *Big Sandy Coal & Coke Co.*, 68 W. Va. 421. It is not enough to relieve the master from civil liability that an infant employee be instructed and have capacity to understand instructions. It must appear that he did understand, and that the dangers to which the instructions related, and which were responsible for his injuries, were not of the kind against which the statute was intended to protect him, or that he was a youth possessing such unusual or extraordinary wisdom and sagacity as to be competent to fully appreciate and guard against the dangers, and that because of his careful instruction, unusual experience and precocity he did appreciate them, and by his own negligence contributed to his injuries, denying him right of recovery. Such we understand to be the law as enunciated in our decisions.

With respect to defendant's instructions number 7 and 8, they both, as does instruction number 5, ignore the requirements that plaintiff must not only have capacity to understand and appreciate his instructions, but that he in fact did understand them, and that his supposed negligent act, absence from his place of duty, in the eighth instruction, was not such act as must have been reasonably anticipated by defendant as the probable consequence of his violation of the statute. Nor do these instructions cover the element noted with respect to the fifth instruction, that the infant servant must be possessed

of unusual wisdom and sagacity to take him out of the class
of youths under fourteen years of age, which the statute was
intended to protect. So we think these instructions were
properly rejected.

The tenth instruction was bad because it told the jury
plaintiff could not recover on account of the matters pleaded
in the first count. Of course if we are right in our conclu-
sions on the demurrer to that count, this instruction was prop-
erly rejected.

The fifth point or proposition of counsel is, that the court
below erroneously rejected special interrogatories to the jury
numbered 2 and 3 as proposed. These interrogatories were
intended to cover findings on the facts assumed in defendant's
instructions numbered 7 and 8, and which would have been
indecisive and not comprehensive of other facts necessary to
constitute a complete defense to the action, so we think these
interrogatories were properly rejected.

The sixth point or proposition is, that the verdict was ex-
cessive, and properly set aside on that ground. We cannot
agree with counsel on this proposition, and likewise deny it.

The last or seventh point or proposition is, that the verdict
was properly set aside on the ground of newly discovered
evidence. This proposition is denied by plaintiff below, plain-
tiff in error, and is relied upon as ground for reversal, and as
already noted, it was the only ground upon which the court
sustained defendant's motion to set aside the verdict and
grant it a new trial. The evidence referred to and relied upon
was that of Dr. John P. Haller, to the effect that on July 10,
1899, he had delivered Mrs. Caleb Griffith, plaintiff's mother,
of a male child, at the hour of 5:05 A. M., and in corrobora-
tion of this fact he produced and defendant was permitted to
introduce in evidence a book of entries, referred to by him
as his obstetrical book, in which witness swore he and his
assistants entered all cases in obstetrics attended by them.
This book shows the entry, in chronological order, of many
cases of obstetrics, and Dr. Haller swears positively that he
could not possibly be mistaken about the fact that Mrs.
Griffith did give birth to a male child on the day and hour
recorded in his book. Mrs. Griffith, the mother of plaintiff,
had sworn positively on the trial that plaintiff was born July

10, 1900, and made reference to some memorandum book, which she said had been kept by her, and in which she had recorded not only the date of plaintiff's birth, but of herself, husband, and other children, also the day and month in her record is the same as in the record kept by Dr. Haller, as will be noted. The difference is in the year; the doctor's record showing 1899, her record and evidence tending to show the year 1900. If the doctor's record be correct and be the record of the birth of plaintiff, plaintiff was over fourteen years of age at the time of his employment, and of the injury complained of. The actual fact of the date of plaintiff's birth, therefore, is a most important one. Mrs. Griffith's record is shown to have been made in pencil; she does not pretend it was made immediately at the date of plaintiff's birth, but she says it was made soon after he was born. The record of Mrs. Griffith was not made in any Bible. She said she had no Bible in which to make the entry.

The place of plaintiff's birth was first disclosed to defendant, so defendant's witnesses say, by the evidence of Mr. and Mrs. Griffith given on the trial. Defendant proved by witnesses on the trial, and particularly by J. Tracy Walker, superintendent, that at the time of plaintiff's employment, he and his mother and father had represented him to be over fourteen years of age, and that defendant was surprised by their evidence to the contrary given on the trial. And it was proven by the witness Walker, superintendent, who had charge of gathering witnesses and preparing the case for trial, that he had pursued all the avenues of inquiry known to him to ascertain the age of plaintiff, had found witnesses, and had had them summoned to testify to plaintiff's declarations beforehand, that he was fourteen or fifteen years old, and knowing as he said he did that plaintiff and his father and mother, at the time of his employment, had represented him to be over fourteen years of age, he had no idea they would attempt to prove the contrary, or that the case would turn on that question. He admits that he made no inquiry of Mr. and Mrs. Griffith as to the place of plaintiff's birth; that this fact cropped out on their examination at the trial, and that as soon as convenient, after learning the place of his birth, he sent a messenger into the country where plaintiff was born and found

Dr. Haller and his record introduced in evidence on defendant's motion for a new trial. Witness says that if it had occurred to him to make inquiry of Mr. and Mrs. Griffith before the trial he felt sure they would not have disclosed any fact or aided him in obtaining evidence for the defense, and that he did not think he could have been reasonably expected to pursue that avenue of inquiry.

It is contended, however, on behalf of plaintiff in error that the evidence on the motion for a new trial was not such as to warrant the court in setting aside the verdict and awarding a new trial. We may say in this connection that there was no evidence offered by plaintiff in error on the motion for a new trial to show that Mrs. Griffith had been delivered of a male child on July 10th, 1899, according to Dr. Haller's record, and also of another male child, the plaintiff, upon July 10, 1900. The contention is and was that the doctor's evidence and record are in error, and it is a concessum that the evidence of the witnesses on both sides of this controversy relate to the birth of the plaintiff, and not some other male child born to Mr. Griffith.

But it is affirmed that this newly discovered evidence is not competent to set aside the verdict; that though discovered since the trial, due diligence to secure it before verdict is not shown; that though material the evidence is merely cumulative and corroborative; that if introduced it is not such as ought to produce an opposite result on another trial, and that its sole object is to discredit or impeach witnesses on the opposite side. That newly discovered evidence must be competent in the particulars referred to is the well settled law of our decisions. *Stewart* v. *Doak Bros.*, 58 W. Va. 172; *Goshorn* v. *Wheeling Mold & Foundry Co.*, 65 W. Va. 250; *Carder* v. *Bank*, 34 W. Va. 38; *Halstead* v. *Horton*, 38 W. Va. 727.

We are of opinion, however, that reasonable diligence to procure evidence on the disputed facts was shown. We have no such case presented here as was presented in *Jacobs* v. *Williams*, 67 W. Va. 377. We are disposed to hold that defendant brought itself reasonably within the rule stated in the sixth point of the syllabus of that case. It is practically conceded that the evidence of Dr. Haller and his record book

are very material, and certainly this evidence is not merely cumulative or corroborative of other evidence introduced by defendant. Defendant introduced no evidence of this class or character. Its only evidence on this subject was alleged previous contradictory statements by plaintiff and his parents. Prior to the trial defendant was unable to obtain by the reasonable diligence employed positive record evidence as to the date of the plaintiff's birth. The evidence of Dr. Haller, and his book of entries, shown to have been a book of original entries, constituted under the authorities original and primary evidence. 1 Wigmore on Evidence, section 737, paragraph 2, page 834; Id. section 747; Id. section 749. Such record entries proved by the living entrant, constitutes not only legal evidence, but evidence of a very high class when proven to have been contemporaneous with the transaction and there could have been no motive to misrepresent. 2 Wigmore on Evidence, sections 1526, 1527; *Smith* v. *State,* (Tex.) 73 S.. W. 401; *Morrow* v. *State,* (Tex.) 120 S. W. 491; 1 Elliott. on Evidence, section 377. The case of *Smith* v. *State, supra,* is directly in point on the admissibility of a physician's record on the question of the date of birth. Quoting from Greenleaf,, the court in that case said: "Where the question was upon the precise day of a person's birth, the account book of the surgeon who attended his mother on that occasion, and in which his professional services and fees were charged, was held admissible in proof of the day of the birth." And *Morrow* v. *State, supra,* sixth point of the syllabus, is directly in point, on the proposition that the other pages of a physician's book and entries therein other than the particular one in question are admissible as bearing on the bona fides of the particular entry in question. So that there can be no doubt, we think, as to the admissibility of Dr. Haller's evidence and his book of entries. True, this evidence is contradictory of plaintiff's witnesses on this question of plaintiff's birth, but all newly discovered evidence warranting a different result on another trial would necessarily be evidence contravening some of the evidence on the side of the prevailing party. The evidence of Dr. Haller is not contradictory in the sense that it ought not to be considered on a motion for a new trial. It is in a material sense *sui generis,* of its own kind. Defendant's:

other evidence of prior and conflicting declarations by plaintiff's witnesses, was contradictory in its character, and that class of newly discovered evidence of course would not be received to overthrow a verdict.

Another contention is that the court cannot say that this newly discovered evidence ought to produce a different result on another trial. But we can say, and the court below may have concluded that if on the new trial awarded the jury should disbelieve plaintiff's witnesses, and believe the disinterested evidence of Dr. Haller and his record, it ought to lead to a different result, and that such would likely be the legitimate effect thereof, and that it would be decisive certainly on the question of the negligence alleged in employing a boy under the age of fourteen years, inhibited by the statute.

Another point made against the correctness of the judgment is, that the jury could have reached the same verdict regardless of the question respecting plaintiff's age. Having carefully examined the declaration and each count thereof, and the evidence adduced on the trial, and plaintiff's instructions to the jury, and the emphasis made in pleadings, evidence and instructions, on the proposition that plaintiff was under the age of fourteen, we do not think we can say that the jury would likely have reached the same verdict, on evidence satisfying them that plaintiff was over the age of fourteen years, and on the theory that the defendant had been negligent respecting other duties owed by master to servant.

Nor can we lose sight of the fact in cases of this character that the court when passing upon a motion for a new trial, has seen the witnesses and their demeanor on the trial, and was better advised than an appellate court could be as to the weight and credibility that ought to be accorded to their evidence; nor that under the rule laid down in other cases, it takes a stronger case to reverse a judgment awarding a new trial than one denying it.

For the considerations aforesaid we are of opinion to affirm the judgment.

*Affirmed*.