## OKLAHOMA PROTECTIVE ASS'N v. MONTGOMERY.

No. 21198. Opinion Filed Oct. 11, 1932.

Rehearing Denied Nov. 22, 1932.

133

Bond, Hatcher & Bond, for plaintiff in error.

Guy Green, for defendant in error.

KORNEGAY, J. This action began in the district court of Jefferson county on the 26th of January, 1929. The allegation of the petition is, that the Oklahoma Protective Association is a corporation, organized under the laws of the state of Oklahoma, and that on the 21st of March, 1928, it issued a certificate of membership to Allen F. Montgomery, which is set out as an exhibit to the petition.

The certificate set forth that Allen F. Montgomery was a member of the association, "with all the rights, privileges, and benefits of the same, subject to the provisions and conditions of the by-laws, together with all changes and amendments thereto that may be enacted in the future, which constitute a part of this contract in the same manner and extent as if printed in the body of this certificate." The association agreed in the certificate that upon satisfactory proof of the death of a member, if the certificate was in full force and effect, within 90 days from acceptance of proof of death, to pay Jodie Montgomery, his wife, the sum of $1 for each membership certificate in force in the association at the time of death, with a proviso that it should not exceed $1,000 plus the unused portion of the reserve fund to the credit of this certificate. The date of the certificate was March 21, 1928.

Answer was filed setting up that in the application for the certificate, which was made a part of the certificate, there were false statements and warranties contained, and an extract from the application is set out, as follows:

" 'It is understood that all statements and answers as written or printed in this application are full, complete, and true, whether written by my own hand or not; and I agree that their truth is a material inducement to and the basis of any insurance issued hereon, and I hereby authorize any physician or other person who has attended me or may hereafter attend me to disclose to said insurance company any information thus acquired.' "

There was a statement that the certificate contains the following clause:

" 'Witnesseth: That in consideration of the statements and warranties contained in the application for this certificate, which are made a part hereof * * * the Oklahoma Protective Association does issue this membership certificate. * * *' "

There were further statements in the answer of the falsity of the statements made as to the condition of health, and as to never having had lung trouble or a surgical operation, and no person in the immediate house had suffered from tuberculosis in two years, and that the applicant had not been confined to the house by illness, and statements of these answers being false and being material and inducements to the issuance of the policy, with an averment that for three years applicant had been suffering with tuberculosis, and that he had a high pulse rate and was running temperature, and misrepresentation as to who his family physician was, and an averment that two years before the application he had been examined for tuberculosis and knew that he was afflicted with it, and he died from it, and there was a statement of having relied upon the statements as being true and that the certificate, by reason of falseness of statement, was null and void. The application for membership is set out in full. A general denial was filed for reply.

The cause came on for trial, and a motion for continuance was made on account of the absence of the evidence of C. M. Maupin, a physician living at Waurika, and it was stated that the evidence expected to be established by him was that he was a medical attendant of the deceased Montgomery, and sent him to Dr. Moorman, a tuberculosis expert in Oklahoma City, in the year 1927, owing to suffering at that time with tuberculosis, and also that, on May 8, 1928, the risk was an habitual drunkard. The motion for continuance was overruled, and at the opening of the trial of the case the plaintiff objected to any

statement being made, in the presence of the jury, of a defense involving the testimony of any physician or confidential communication or privileged communication obtained by the physician from the risk, A. F. Montgomery, or to disclose any statement made by said Montgomery as between patient and physician, as well as the offer of any testimony by any physician that involves confidential or professional information received by him or heard on such examination or consultation, as the case may be. The court sustained the motion, and the defendant excepted.

The beneficiary was permitted to testify to the death of the deceased, and when, and of her making out a return of death. She testified that he was sick 13 weeks before he died, and he had been in the Clinton Sanitarium, but objection was made to her being asked, on cross-examination, as to who advised her to take him there. With this testimony the plaintiff rested, and demurrer was interposed and overruled.

The defendant introduced portions of the by-laws as to the application for membership and what constituted the contract, making the application and by-laws part of the contract, and the sections on misrepresentation, and the effect of misrepresentation to nullify the certificate, and a by-law that agents were not empowered to do anything more than receive, recommend, and forward to the association applications from the localities to which they were appointed. There was a section providing that the membership certificates should be incontestable, in the absence of fraud, after one year from the date of issuance, provided dues were kept up. Various reports of attending physicians were offered and rejected, some being exhibits to depositions taken by plaintiff. The deposition of T. C. Anthony, taken by the plaintiff, was offered, also the deposition of Dr. Darnell. superintendent of the Western Tuberculosis Hospital near Clinton, and R. L. Hickman, and the court sustained objection to them, because they were privileged on the ground of being confidential communications of patient to a physician.

If the matter detailed in those depositions is true. unquestionably the insured had for a long time been suffering from tuberculosis, and was so suffering at the time he made the answers, and in such a way that he was bound to have known it. At the time of the examination in August, 1928. according to the history given to the doctor, he had not been in good health for two years, and the first evidence he

had of tuberculosis came from a sputum examination by Dr. Moorman in 1926.

Dr. Moorman's deposition was offered, but rejected as being privileged. He stated that he operated a sanitarium for lung diseases, and that he examined A. F. Montgomery May 1, 1926, and at that time he had tuberculosis of the lung, moderately advanced, and that he judged that it started from the "flu" in September, 1925, and he detailed the history given, after he entered the sanitarium, from which it is clear that his trouble had started, in the estimation of Dr. Moorman, with the "flu" in 1925. This was excluded and exceptions were taken, and the jury found for the plaintiff, after instructions.

The case is brought here and brief filed, complaining of the action of the court in excluding testimony on account of being a privileged communication. Evidently the court below was applying section 589, C. O. S. 1921 [O. S. 1931, sec. 2721] forbidding a physician or surgeon to testify. The applicable part of the prohibition in that section is as follows:

"Sixth: A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease or any knowledge obtained by a personal examination of any such patient: Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination. also an attorney. clergyman, priest. physician or surgeon, on the same subject within the meaning of the last three subdivisions of this section."

The point is made. however, that. under the law by which the insurance was procured, the party had agreed, as a basis for getting the insurance, that any physician or other person who had attended him or might thereafter attend him should disclose to the insurance company any information acquired.

By reference to the statutes on the subject of insurance, it will be found that the insurance here involved was had under the provision of the act of 1925, being chapter 32, sec. 12, Sess. Laws 1925 [O. S. 1931, sec. 10631] which is as follows:

"Sec. 12. Applicants for membership in mutual benefit associations shall be required to pass a medical or physical examination such as may be required by the by-laws of the association, or benefit certificates may be issued upon the warranty by the applicant that the answers and statements to the questions as to the conditions of health of the applicant and all the other representations made in the application for a benefit certificate are true and are to-

be used as the basis and consideration upon which said benefit certificate is issued; provided, that in addition to the answers and representations of the applicant for membership, as herein provided, the applicant shall give the name and address of his or her family physician and shall furnish to the association a certificate of such physician, or, if applicant has no family physician, a certificate of a licensed physician, that he knows the applicant and believes that the applicant is a good, insurable risk; provided, that if the family physician refuses to sign a certificate stating whether applicant is a good insurable risk, a certificate from some other licensed physician may be secured; and, provided further, that the fee for such certificate shall not exceed fifty cents (50¢). It shall be unlawful, for the beneficiary, his agent or representative, under any policy or certificate issued by any association or company coming within this act, or any doctor, undertaker, or other attendant, to knowingly conceal, withhold, or misrepresent any facts concerning the health, age, cause of death, or other material information as to the deceased member or policyholder because of whose death or accident claim is being made."

This section is a statutory change in the ordinary rules applicable to ordinary insurance policies, and it is clear that under it all parties were supposed to act in the best of faith each with the other, as medical examination was dispensed with on the faith of the association in the truth of the applicant's statements, and that what ordinarily might be a representation becomes a warranty. The act specifically provides that it shall be unlawful for the beneficiary or any doctor, undertaker, or other attendant to knowingly conceal, withhold, or misrepresent any facts concerning the health, age, cause of death, or other material information as to the deceased member or policyholder, because of whose death or accident claim is being made.

The truth ought to be the object of every inquiry, and we can see no reason why a court, under that section, should not require full disclosure in court by any doctor, undertaker, or any attendant concerning the health, the cause of death, or other material information as to the deceased member or policyholder. When there is added to this, however, a positive agreement, made in the application, that becomes a part of the certificate, that this shall be done, and the insured authorized it, we see no reason why the doctor should not tell the facts. The general doctrine is that where the insured, under an ordinary case, makes an agreement like this, it will control. The cases are reviewed in 28 R. C. L., sec. 135, p. 546. Those cases evidently are cases concerning insurance in ordinary cases, but this insurance is under a special statute and to meet a special emergency.

We are referred to two cases that have been decided by this court, one of them being United States National Life & Casualty Co. v. Heard, 148 Okla. 274, 298 P. 619, opinion being filed April 28, 1931, in which there is a discussion of waiver by conduct of the beneficiary and as to whether or not a waiver with reference to one doctor is a waiver as to others. The opinion is silent as to whether there was any agreement of the kind that is here relied on, and the presumption is that there was not. However, there is a case more nearly in point, that our attention is called to, of National Life & Accident Ins. Co. v. Bell, 144 Okla. 236, 291 P. 106. That was a case of an Arkansas insurance company, in which there was a clause in the application as follows:

"I hereby waive, on behalf of myself or of any person who shall be interested in the policies hereinbefore mentioned, all provisions of law forbidding or restricting any physician or other person who, at any time, attended or examined the deceased, from disclosing in the courts or otherwise, any knowledge, information or belief which he thereby acquired; and I hereby specifically authorize all such persons to freely communicate their knowledge to the company, if it requires them to do so."

The statement is made in the opinion, as follows:

"This instrument is merely a written promise to waive the privilege. Assuming, then, that plaintiff, as beneficiary under the policy, might legally waive the privilege granted the deceased under the statute in question, still, this instrument was ineffective to irrevocably accomplish this purpose. Defendant insurance company in no wise changed or altered its position by reason thereof. The waiver was no part of the terms or conditions upon which the policy was issued. Plaintiff, therefore, had the right to withdraw the same at any time before it was acted upon.

"In 40 Cyc, at page 2405, the following rule is announced:

" 'A waiver of the privilege extends to the whole transaction. A waiver may be recalled at any time before it is acted upon, but when the waiver is once acted upon, the privilege is entirely lost.'

"In Herpolsheimer v. Citizens' Insurance Co. (Neb.) 113 N. W. 152, it is said:

" 'A waiver of protection against the disclosure of privileged communications may be withdrawn at any time before acted upon.'

"Our attention has been called to numerous cases in which waivers of this kind appear in the insurance policy. These cases hold such waiver valid and binding on the beneficiary. We do not, however, consider these cases applicable to the situation here presented."

As applied to the present case, the certificate was issued on the strength of the waiver and authorization, and we think the general rule applied that the contract must be followed pursuant to the requirements of the statute, and that the court below in this case committed reversible error in refusing to allow the depositions to be read.

A fair exposition of the law applicable can be found in National Annuity Association v. Maude McCall (Ark. Sup. Ct.) 48 L. R. A. (N. S.), page 418, citing with approval an opinion of Justice Thayer of Adreveno v. Mutual Reserve Fund Life Ass'n, 34 Fed. 870, and Metropolitan Life Ins. Co. v. Brubaker, 96 P. 62, decided by the Supreme Court of Kansas.

The case is accordingly reversed at the cost of appellee, with directions to grant a new trial and to proceed in accordance with the views herein expressed.

HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and RILEY and McNEILL, JJ., dissent. CLARK, V. C. J., absent.