## No. 31,030.

WILLIAM NOVAK and JOSEPH NOVAK, *Appellees,* v. CHICAGO FRATERNAL LIFE ASSOCIATION, *Appellant.*

(16 P. 2d 507.)

Opinion filed December 10, 1932.

*Arthur J. Stanley* and *Arthur J. Stanley, Jr.,* both of Kansas City, for the appellant; *George R. Allen,* of Topeka, of counsel.

*H. S. Roberts* and *Joseph A. Lynch,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action on a life-insurance policy. Judgment was for plaintiff. Defendant appeals.

Mike Novak at the time of his death was a member of appellant association. William and Joseph Novak were beneficiaries. This action is brought to collect on the policy.

Mike Novak stated in his application for insurance that he was born October 8, 1872; that he had never had disease of the heart, bladder or liver, diabetes or palpitation of the heart, but had had only "influenza 6 weeks, March, 1928. Complete recovery."

On the day the case was called for trial appellant asked for a continuance and offered an affidavit of Dr. T. F. Barney in part as follows:

"That he had known Mike Novak, the insured, and treated him in March of 1928, which was prior to the date the application for insurance in this case was made, and that at said time the said Mike Novak was suffering from heart trouble and liver trouble and that his treatment did not relieve or cure the said Mike Novak of his trouble."

The defense pleaded was that deceased by his answer to the questions in his application was guilty of a breach of warranty. The continuance was denied after a stipulation that the affidavit might be read as the deposition of the doctor, if held by the court to be competent. When the affidavit was offered, objection to it was sustained on the ground that it was a privileged communication. Appellant argues that the privilege was waived when insured answered certain questions in the application. These questions were as follows:

"28. How long since you were under the care of a physician, and for what cause? Dr. Barney, K. C. Kan., for influenza, March, 1928.

"29. Name and address of the doctor who treated you last. Dr. Barney, K. C. Kan."

It is also argued that the question of privilege cannot be raised by beneficiaries, but only by the person by whom the communication was made, his legal representative or assignee.

The statute in this state that makes the testimony of a physician incompetent under certain circumstances is R. S. 60-2805. It reads as follows:

"The following persons shall be incompetent to testify:

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Sixth: A physician or surgeon concerning any communication made to him by his patient with reference to any physical or supposed physical disease, defect, or injury, or the time, manner or circumstances under which the ailment was incurred, or concerning any knowledge obtained by a personal examination of any such patient, without the consent of the patient.

"But, if a person without objection on his part testifies concerning any such communication, the attorney, clergyman, priest or physician communicated with may also be required to testify on the same subject as though consent had been given within the meaning of the last three subdivisions."

This provision reserves the privilege to the patient. It is for his benefit. The theory is that there must be such a rule in order that patients will consult freely with their physicians and secure the best treatment. One must not withhold facts from his doctor, for his physical welfare; from his lawyer, for his material welfare; or from his spiritual adviser, for his spiritual welfare. This statute was enacted to make complete disclosures to a physician easy. The privilege may, however, be waived. As to that, appellant relies on what was said in *Insurance Co. v. Brubaker*, 78 Kan. 146, 96 Pac. 62. That case held that a waiver of the privilege signed by the insured when he applied for his policy was good. The court said:

"This privilege, like many others, even those protected by constitutional guaranty, may be waived. By statute, if the party himself testify the privilege is waived. If he publish the confidential matter to the world the privilege is waived. (See *In re Elliott*, 73 Kan. 151, 84 Pac. 750; *In re Burnette*, 73 Kan. 609, 85 Pac. 575.) And it would deprive him of a valuable right if he were prohibited from making a waiver by contract in advance of litigation." (p. 155.)

What appellant is contending for is that besides the waivers that are spoken of in that opinion, the privilege may be waived by the patient disclosing the name of his physician.

This is not the rule. It will be seen that the statute requires that before the statute is waived by testifying, the testimony must be "concerning any such communication." It has been held that—

"The fact that the plaintiff had testified that she had sustained injuries, and that she called Dr. Herr, and that he had prescribed for her back and side, did not justify the admission of the evidence of the physician as to what he had or had not discovered as the result of an examination of the plaintiff's person. The statute sets the seal of secrecy and confidence upon what a physician observes in respect to the condition of his patient's person in the course of his professional examinations, as well as upon communications made to him by his patient." (*Williams v. Johnson*, 112 Ind. 273, 274.)

See, also, *Masonic Mutual Benefit Association v. Beck*, 77 Ind. 203.

In *Phelps Dodge Corporation v. Guerrero*, 273 Fed. 415, plaintiff had testified that a doctor in Morenci had treated him. It was insisted that this was a waiver of the privilege and that the doctors

might be at liberty to testify as to the privileged matter. The court said that the testimony was not "with reference to such communications" and held the offered testimony of the physicians was incompetent. This opinion quoted 40 Cyc. 2399 as follows:

"There must be a distinct and unequivocal waiver in order to authorize the disclosure of privileged communications."

See, also, *McConnell v. City of Osage*, 80 Ia. 293.

Appellant relies upon the case of *Armstrong v. Street Railway Co.*, 93 Kan. 493, 114 Pac. 847. There this court held that the statute in question would be liberally construed in favor of competency of offered evidence. Conceding that to be the rule, it is well to notice that in that case the plaintiff testified himself and permitted one of his physicians to testify as to minute details and circumstances of a street-car injury. The court held that this was a waiver of the privilege as to communications made to other physicians. Since that case is being urged as an authority for holding that the privilege was waived in this case the following language from *Armstrong v. Street Railway Co.* is noted:

"The court is of the opinion that the statute does not contemplate that waiver follows from the mere fact that the patient himself testifies to his physical condition and the manner and circumstances of his injury. In doing so he need not disclose confidential communications to his physician, and if he do not, the communications are still privileged." (p. 506.)

In this case the answers in the application for insurance which are urged as a waiver do not constitute disclosure of a communication, which the authorities hold is necessary to constitute a waiver. We therefore conclude that the argument of appellant as to the waiver of the privilege is not well taken.

Appellant makes the further argument that the privilege cannot be claimed by a beneficiary under an insurance policy. The books are full of cases where the beneficiaries have claimed it. In *O'Brien v. General Accident Fire & Life Assurance Corp.*, 42 F. 2d 48, the court passed squarely on this question and held:

"Beneficiary under policy could object to evidence of insured's statement to physician on ground it was privileged communication."

In *Davis v. Supreme Lodge Knights of Honor*, 54 N. Y. Supp. 1023, the court held:

"When the knowledge of a physician or surgeon in relation to a patient falls within the purview of Code Civ. Proc. sec. 834, not allowing him to disclose it, any party in interest or to an action may object to his testifying thereto."

It is well settled that the objection may be raised by the person who made the communication, his personal representative or assignee. (See 40 Cyc. 2394.) The reason given for this rule is that the same reason existed why one about to confide in a physician should believe that any disgraceful secret he might divulge would, after his death, be kept safely in the breast of the physician rather than rise from the grave to blacken his memory and bring disgrace on his loved ones. This reason applies with equal force to a beneficiary.

We, therefore, conclude that the beneficiary in this case was entitled to object to the testimony of Doctor Barney on the ground that it was a confidential communication.

The judgment of the district court is affirmed.