## NATIONAL LIFE & ACCIDENT INS. CO. v. ROBERSON.

No. 22809. Oct. 2, 1934.

William M. Franklin, for plaintiff in error.

Conner & Conner, for defendant in error.

PER CURIAM. On September 4, 1929, Mattie E. Suggs made written application to the National Life & Accident Insurance Company, hereinafter called defendant, for a policy of insurance. In her application she stated that she had not had certain enumerated diseases, including tuberculosis, and that medical attention had by her during the preceding five years was in June, 1929, when she was treated for influenza.

On September 16, 1929, a policy was issued. Thereafter, on April 13, 1930, said Mattie E. Suggs died of pulmonary tuberculosis in the Western Oklahoma State Tuberculosis Sanitarium, at Clinton, Okla., and Gertie E. Roberson, hereinafter called plaintiff, daughter of insured and beneficiary, filed claim with proofs of death attached, and defendant denied liability. Thereafter, plaintiff commenced this action in the district court of Oklahoma county to recover on the the policy. Defendant answered, alleging that the statements in the application above referred to were willfully false, fraudulent, and misleading, and that deceased was not in sound health on the date of the policy. The trial resulted in a verdict and judgment for plaintiff, from which this appeal is prosecuted.

The policy contained this provision:

"No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive, and in sound health. Should the proposed insured not be alive or not be in sound health on the date hereof, any amount paid the company as a premium shall be returned."

In support of its contention that insured was not in sound health on the date of the policy and that the statements in the application were willfully false, fraudulent, and misleading, defendant offered to prove by Dr. W. H. Elmore that he treated deceased for tuberculosis and other ailments in July before she applied for the insurance, and that she was compelled to quit work during said period because of her condition. Defendant also offered the deposition of Dr. E. E. Darnell to prove that he examined deceased when she was admitted to the Western Oklahoma State Tuberculosis Sanitarium in April, 1930, and obtained from her a history of her ailment; that deceased told him she had a chest examination in June, 1929, and a diagnosis of tuberculosis, and that she stopped work at that time; that she was last in good health 13 years before, when she had measles and an abdominal operation; that she had lost 15 or 20 pounds since June, 1929, and had a small hemorrhage before admission to the sanitarium; that she gave a history of cough, night sweats, fever, loss of strength, pain in chest, pleurisy, difficult breathing, indigestion, diarrhea and hoarseness since June, 1929. That in his opinion she was in an advanced stage of tuberculosis and had been in such condition about a year before she was admitted to the sanitarium. This evidence was excluded on the ground that same was privileged under subdivision 6, section 272, O. S. 1931.

In the application for insurance signed by deceased, the following provision is contained:

"I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing in the courts or otherwise, any knowledge or information which he thereby acquired; and I hereby specifically authorize all such persons to freely communicate their knowledge to the company, if it request them so to do."

The above provision in the application for insurance constituted a waiver of the privileged character of the testimony which was binding on plaintiff, and the exclusion of such evidence was error. Oklahoma Protective Ass'n v. Montgomery, 160 Okla. 135, 16 P. (2d) 135.

The stipulation of counsel, made at the time the deposition of Dr. Darnell was taken, that objections to the testimony of said witness might be made at the trial instead of at the time of taking the depositions with the same force and effect as if made at the time of taking the depositions, did not waive the above provision in the application for insurance.

Defendant also offered in evidence the record and history of the deceased as made and kept by Oklahoma City health department, and sought to prove the authenticity of these records by Minnie A. Thomas, the superintendent of the nursing bureau of said health department, who testified that same were public records but were not made by her, being made by other nurses in the department. Included in said records were X-ray photographs of the lungs of the deceased made prior to the time she applied for insurance. The court excluded this evidence, and in this there was no error. Defendant cites no authorities in support of its contention that said records were admissible upon the ground that they were public records required to be kept by law. The admissibility of such evidence has been passed upon by the courts a number of times, and by the weight of authority is held inadmissible under the circumstances here presented. Jordan v. Apter, 93 Conn. 302, 105 Atl. 620; Chernov v. Blakeslee, 95 Conn. 617, 111 Atl. 908; In re Hock's Will, 129 N. Y. S. 196;

Meyer v. Nassau Elec. R. Co., 137 N. Y. S. 529; Harkness v. Borough of Swissvale, 238 Pa. 544, 86 Atl. 478; Sovereign Camp. W. O. W., v. Grandon (Neb.) 89 N. W. 448.

The preliminary facts necessary to be shown in order to admit X-ray films are stated by this court in Bartlesville Zinc Co. v. Fisher, 60 Okla. 139, 159 P. 476, where this court said:

"The admission of X-ray plates in evidence rests fundamentally on the theory that they are the pictorial communication of a qualified witness who uses this method of conveying to the jury a reproduction of the object of which he is testifying; this being true, the X-ray plates must be made a part of some qualified witness' testimony and the witness should qualify himself by showing that the process is known to himself to give correct representations, and that it is a true representation of such object.

"The rule has been well considered and illustrated in numerous decisions upon this subject, and the result of the case is well stated in Watthaus & Becker, Medical Jurisprudence, vol. 3, p. 779:

"'The mere introduction of a negative, however, should not be sufficient. The ability of the operator to produce as well as to interpret the same should be questioned. The operator himself should be required to testify as to the technique employed, as well as to the developing, especially as to the use of any means whereby the plate had been artificially changed to bring into relief certain features.'

"See, also, Greenleaf on Evidence (16th Ed.) sec. 439; Stewart on Legal Medicine, sec. 13; Wigmore on Evidence, sec. 795; 17 Cyc. 420; Lupton v. Southern Express Co., 169 N. C. 671, 86 S. E. 614; Griffith v. American Coal Co., 75 W. Va. 686, 84 S. E. 621, L. R. A. 1915F, 803; Eckels et al. v. Boylan, 136 Ill. App. 258; Prescott & N. W. Ry. Co. v. Franks, 111 Ark. 83, 163 S. W. 180, Ann. Cas. 1916A, 773; Pecos & N. T. Ry. Co. et al. v. Winkler (Tex. Civ. App.) 179 S. W. 691; De Forge v. New York, N. H. & H. R. R., 178 Mass. 59, 59 N. E. 669, 86 Am. St. Rep. 464; Doyle v. Singer Sewing Machine Co., 220 Mass. 327, 107 N. E. 949; Ligon v. Allen, 157 Ky. 101, 162 S. W. 536, 51 L. R. A. (N. S.) 842.

"In the last case, supra, it is said:

"'To render an X-ray photograph admissible in evidence, its accuracy must be established.'

"The evidence afforded to identify the X-ray plates was given by Dr. Mortimer A. Houser, who testified that from an examination of the plaintiff, based upon symptoms related to him, he was unable to find the cause of the plaintiff's trouble; that he sent the patient to Dr. Butler to have an X-ray plate made; that he was not present when Dr. Butler made the plates. * * *

"Dr. Butler, the expert who made the plates, did not testify, nor did any one who was present at the time the plates were made. The plates were not admissible in evidence, nor could they be, until they were properly identified or shown to have been made by trustworthy instruments properly used by a person skilled in making, reading, and interpreting such plates and further shown to be correct representations of the bony structure of the plaintiff's head."

No such showing was made as to the X-ray films offered by defendant and excluded by the court.

The policy contained this provision:

"This policy contains the entire agreement between the insured and the company."

The application for insurance is not attached to the policy and made a part thereof, nor is any reference thereto made in the policy, and plaintiff contends that by virtue of the above provision and of section 10519. O. S. 1931 (sec. 6728, C. O. S. 1921), defendant is precluded from relying upon the statements in the application for insurance concerning the previous health of insured and the medical attention received by her, and from showing that said statements were willfully false, fraudulent, or misleading.

In Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084, the ninth paragraph of the syllabus reads:

"That part of section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), which provides: 'In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, or in case said insured is a minor, without the consent of the parent, guardian, or other person having legal custody of said minor, the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties; Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent, or misleading, and, provided, further, that every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence' —does not prevent proof that statements made in the application are willfully false, fraudulent, or misleading by the introduc-

tion of the application in cases where the policy contains no reference thereto either as a part of the policy or as having any bearing thereon."

Defendant was entitled to plead and prove that the statements in the application for insurance relied upon were willfully false, fraudulent, or misleading, and the burden of proof to maintain this issue was upon the defendant.

In Owen v. United States Surety Co., 38 Okla. 123, 131 P. 1091, the fourth paragraph of the syllabus reads:

"Under section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), the burden of proof to establish the materiality of a misrepresentation or concealment, as well as the fraudulent intent of the insured, is upon the insurance company, and the burden is not shifted where it is shown that the insured made an untrue answer concerning other insurance, for, if there be a presumption that his failure to mention it was intentional, this is met by the presumption that a man does not make a fraudulent misstatement, and the question is therefore for the jury, upon all the evidence."

The burden of proof was upon the defendant to show that on the date of the policy the insured was not in sound health. Mid-Continent Life Ins. Co. v. House, 156 Okla. 285, 10 P. (2d) 718.

The court instructed the jury that there was but one issue for them to determine, namely, whether insured on the date of the application, September 4, 1929, was then suffering from pulmonary tuberculosis, and whether at the time she made the statements relied upon by defendant that they were falsely, fraudulently, and willfully made for the purpose of deceiving defendant, and that they did actually deceive defendant, and that if they so found they should return a verdict for defendant.

This was error. The defendant not only relied upon the alleged fraud of insured in willfully making false answers to the questions in the application for insurance, but also relied upon the provision in the policy to the effect that no obligation was assumed by the company unless insured on the date the policy was issued was alive and in sound health. The court should have submitted both of those issues to the jury under proper instructions.

The right of defendant to show that the answers to questions in the application for insurance were willfully false, fraudulent, or misleading, was not limited to whether insured was suffering from pulmonary tuberculosis alone on the date of the application, but the defendant was entitled to show that said answers were willfully false, fraudulent or misleading as to any of the matters inquired about, which were material to the risk assumed by it existing on the date of the application or previous thereto.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

The Supreme Court acknowledges the aid of Attorneys Summers Hardy, J. A. Duff, and John Ladner in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hardy, and approved by Mr. Duff and Mr. Ladner, the cause was assgned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, with

RILEY, C. J., dissenting.