### TEMPLETON v. MUTUAL LIFE INS. CO. OF NEW YORK.

No. 25893.   May 12, 1936.

Wellington L. Merwine and Carland Smith, for plaintiff in error.

Embry, Johnson, Crowe & Tolbert, for defendant in error.

GIBSON, J. The parties here appear as they did in the trial court.

Plaintiff sued upon an insurance policy issued by defendant company June 25, 1929, upon the life of Robert C. Templeton, her son, who died May 1, 1930. The defendant, in its answer, admitted the execution, issuance, and delivery of the policy of insurance, but alleged that said policy was procured to be issued by the deceased by means of willfully false, fraudulent, and untrue statements and representations contained in the application for the insurance and made to defendant's medical examiner concerning deceased's then present health, past illnesses, and prior medical treatment, and defendant tendered a return of the premium paid, together with interest thereon. Plaintiff, in her reply, denied the allegations of the answer, and upon the issues thus formed and the evidence, the cause was submitted to a jury, which, after consideration, returned a verdict in favor of the defendant, upon which the court rendered judgment. The defendant assumed the burden of proof and introduced in evidence the policy of insurance and the application therefor. It then offered the testimony and depositions of a number of physicians who had treated, examined, and observed professionally the insured at different times over a period commencing several years before the issuance of the policy and extending up to the time of the insured's death. The application for insurance which the insured signed contained the following provision:

"This application is made to the Mutual Life Insurance Company of New York herein called the Company. All the following statements and answers, and all those that the Insured makes to the Company's Medical Examiner, in continuation of this application, are true, and are offered to the Company as an inducement to issue the proposed policy. The Insured expressly waives on behalf of himself or herself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined, or who may hereafter attend or examine the Insured, from disclosing any knowledge or information which he thereby acquired. * * *"

The trial court admitted, over the objections and exceptions of the plaintiff, the testimony of the physicians and surgeons above referred to concerning communications made to them by the insured with reference to the physical and supposed physical disease and the knowledge obtained by said physicians and surgeons from a personal examination of the insured. The plaintiff urges this as error and presents it under her first proposition.

Section 589, subd. 6, C. O. S. 1921 (sec. 272, subd. 6, O. S. 1931), is as follows:

"The following persons shall be incompetent to testify: * * *

"Sixth. A physician or surgeon, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient: Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney, clergyman or priest, physician, or surgeon on the same subject, within the meaning of the last three subdivisions of this section."

Plaintiff relies on that section and contends that insured could not waive by contract the privilege afforded by the statute, but could do so only by offering himself as a witness. We have held to the contrary.

In National Life & Accident Ins. Co. v. Roberson, 169 Okla. 136, 36 P. (2d) 479, evidence of certain physicians was excluded by the trial court on the ground that the same was privileged under subdivision 6, sec. 272, O. S. 1931, the statute relied on by plaintiff in the instant case; but this court held the ruling erroneous, and said:

"In the application for insurance signed by deceased, the following provision is contained:

" 'I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing in the courts or otherwise, any knowledge or information which he thereby acquired; and I hereby specifically authorize all such persons to freely communicate their knowledge to the company, if it request them so to do.'

"The above provision in the application for insurance constituted a waiver of the privileged character of the testimony which was binding on plaintiff, and the exclusion of such evidence was error. Oklahoma Protective Ass'n v. Montgomery, 160 Okla. 135, 16 P. (2d) 135."

In Oklahoma Protective Ass'n v. Montgomery, 160 Okla. 135, 16 P. (2d) 135, we held:

"The application for insurance, on which the certificate of insurance was issued, signed by the insured, contained a stipulation as follows: 'It is understood that all statements and answers as written or printed in this application are full, complete and true, whether written by my own hand or not: I agree that their truth is a material inducement to and the basis of any insurance issued hereon. And I hereby authorize any physician or other person who has attended me or may hereafter attend me to disclose to said insurance company any information thus acquired.' The court refused to allow the testimony of attending physicians as to communications made by the applicant to them concerning disease from which the applicant suffered, and their knowledge of disease of this applicant gained by examination. Held, reversible error was committed."

The rule announced seems to be the one followed in all jurisdictions which have considered this question except New York and Michigan. In New York, under a statute peculiar to that state, the waiver must be made on the trial or examination. In Michigan it is provided by statute that the privilege could not be waived except by the personal representative and at the trial, and then only in a will contest. See Supreme Lodge of Knights of Pythias v. Meyer, 198 U. S. 508, 49 L. Ed. 1146, 25 S. C. 754, and Gilchrist v Mystic Workers of the World (Mich.) 154 N. W. 575. Kansas has a statute the pertinent part of which is identical with section 272, supra. In Metropolitan Life Ins. Co. v. Brubaker (Kan.) 96 P. 62, the court said:

"* * * The statute quoted contemplates that the patient may consent to his physician's testifying. Therefore, no question of public policy is involved. The public policy of the state does not depend upon the will of individuals who are free to act as circumstances may suggest them. It is elementary law that communications, made in professional confidence, are not incompetent. If a third person hear them he may testify. The disqualification is imposed upon the lawyer, physician, or priest only, and not for his benefit, or for the benefit of the public, but merely as a privilege to the client, patient, or person confessing. This privilege, like many others, even those protected by constitutional guaranty, may be waived. By statute, if the party himself testify, the privilege is waived. If he publish the confidential matter to the world, the privilege is waived. See In re Elliott, 73 Kan. 151, 84 P. 750; In re Burnette, 73 Kan. 609, 85 P. 575. And it would deprive him of a valuable right if he were prohibited from making a waiver by contract in advance of litigation. * * *"

The rule announced in the Brubaker Case has been approved and followed by the Supreme Court of Kansas in many of its later decisions, notably the following: Novak v. Chicago Fraternal Life Ass'n (Kan.) 16 P. (2d) 507; Armstrong v. Topeka Ry. Co. (Kan.) 144 P. 847; Matthews v. McNeill (Kan.) 157 P. 387; Bruington v. Wagoner (Kan.) 164 P. 1057; Flack v. Brewster (Kan.) 190 P. 616.

The Brubaker decision has also been quoted with approval in Prahm v. Prudential Ins. Co. of America (N. J.) 116 Atl. 798; Schornick v. Schornick (Ariz.) 220 P. 397; New York Life Ins. Co. v. Snyder (Ohio) 158 N. E. 176.

In New York Life Ins. Co. v. Snyder, supra, it was said:

"We have no hesitancy in saying that it is not against public policy, nor in violation of the terms or spirit of section 11494, General Code, to enforce such a waiver. To hold otherwise would be to open wide the doors of both fraud and suicide with respect to the procuring of life insurance policies, and it would jeopardize the soundness and safety of life insurance in general. No sound reason appears why a policy of insurance, attended by an agreement and waiver such as in this case, should not be enforced when the evidence sustains the claim that the policy was procured by false and fraudulent statements, knowingly made, to induce the issue of the policy, when neither the insurance company nor its agent knew of the falsity of the statements made by the insured. To enter a judgment in favor of the insured, after excluding the evidence of physicians with respect to his physical condition at the time of the taking out of the policy, is not in furtherance of justice. Surely the insurance company has a clear right to say to an applicant for insurance, 'We will not

issue a policy of insurance to you unless you give to the company full and complete authority to acquire any information which any physician may now possess or may hereafter possess concerning the state of your health at the time of taking out the policy.'"

In National Annuity Association v. McCall (Ark.) 146 S. W. 125, 126, 48 L. R. A. (N. S.) 418, the court, in discussing the question under consideration, said:

"A person may also, in his written application for insurance, waive the right to object to the testimony of a physician as to information acquired while attending him as such. In the case of Adreveno v. Mutual Reserve Fund Life Asso. (C. C.), 34 Fed. 870, Judge Thayer, in passing upon a statute in every essential similar to sec. 3098 of Kirby's Digest, said: 'As the patient is at liberty to waive the privilege which the law affords him, it appears to me it is immaterial whether the patient waives the privilege by calling the physician to testify in his behalf, or whether he waives it, as in this case, by a clause contained in the contract on which the suit is brought; and, if the patient himself waives the privilege by a clause contained in the contract, that waiver, in my judgment, is binding on any one who claims under the contract, whether it be the patient himself or his representative. The result is that, inasmuch as the assured by this application waived the privilege which the statute confers upon him, the father, for whose benefit the policy is issued, and who is now suing on the contract, is bound by that waiver.' See, also, Fuller v. Knights of Pythias, 129 N. C. 318, 85 Am. St. Rep. 744, 40 S. E. 65; Grand Rapids & I. R. Co. v. Martin, 41 Mich. 667, 3 N. W. 173, 12 Am. Neg. Cas. 95; Foley v. Royal Arcanum, 151 N. Y. 196, 56 Am. St. Rep. 621, 45 N. E. 456."

In 28 R. C. L., pp. 542, 543, it is said:

"The object of statutes making communications between physician and patient privileged is not absolutely to disqualify the physician from testifying, but to enable the patient to secure medical aid without betrayal of confidence. The patient may therefore waive objection, and permit the physician to testify. In other words, the privilege is the privilege of the patient, and not of the physician; and by the great weight of authority, if the patient assents, the court will compel the physician to answer. * * *"

In Cyclopedia of Insurance Law (Couch) p. 7107. sec. 2199a, the rule is stated as follows:

"With the exception of those jurisdictions in which particular statutory provisions to the contrary control, the generally accepted rule is that a physician's incompetency to testify concerning confidential communications between himself and the insured may be waived by the latter in his application or policy, and that such a waiver is binding upon anyone claiming any interest under or by virtue of the policy, but the testimony of such physician is not admissible until after the instrument containing the waiver has been introduced in evidence."

In Wigmore on Evidence, vol. 4, in section 2388, it is said:

"The privilege may be waived, like all other privileges. It is astonishing to find that this question could ever have been regarded as debatable. Nothing but a confusion of fundamental ideas could ever create any doubt. * * *

"That a waiver may be irrevocably made by contract before litigation begun has generally been conceded by the courts. It should certainly be sanctioned, unless made under conditions of duress or fraud which would have rendered the contract in other respects voidable."

The uncontradicted evidence shows that the insured knew at the time the policy was applied for that he was suffering from a malady that would result in his death and that the policy was obtained by false and fraudulent statements knowingly made for the purpose of concealing those facts. To deprive the insurance company of the right to prove the true facts when the deceased had expressly waived the privilege as an inducement to enter into the insurance agreement would be to deny to the defendant right and justice.

There was no question of fraud or duress in securing the waiver. A privilege not involving public policy may be waived even though it be a constitutional one. To hold otherwise would destroy a valuable contract right. Where one has availed himself of this right and by reason thereof has caused another to change his position, he should be bound by his own solemn agreement.

Plaintiff next complains of the trial court's error in permitting certain exhibits attached to a deposition to be admitted in evidence and read to the jury. These exhibits consisted of copies of hospital records, and plaintiff objected to their introduction on the ground that the copies were not the best evidence. A proper predicate was laid for the admission on the ground that it was hearsay, but conceding that the evidence was inadmissible, it was merely cumulative of the evidence of other witnesses and the error, if any, in the admission of said evidence was harmless. Section 3206, O. S. 1931.

In Ray v. Harrison, 32 Okla. 17, 121 P. 633, Ann. Cases. 1914A, 413, we said:

"When the testimony upon a given point is all harmonious, a cause will not be reversed because some of the evidence thus offered may have been inadmissible."

Plaintiff's third and last assignment of error is as follows:

"The court erred in overruling the amended motion of plaintiff to require the defendant to make its answer and cross-petition definite and certain."

In substance, plaintiff contends that the answer and cross-petition of the defendant attempts to plead a legal defense by general denial and an equitable defense of rescission or cancellation for fraud. The defenses contained in defendant's answer were separately stated and numbered. It consisted of a general denial, and in support thereof allegations of fraud in procuring the policy to be issued, tendered back the premium paid and asked cancellation of the policy. It stated only one defense, a legal one. 13 C. J., p. 782, section 991; State Life Ins. Co. v. Johnson, 73 Kan. 567, 85 P. 597.

When defendant was sued at law on the policy, it elected to repudiate the contract for fraud and tendered back the premium paid as a condition precedent to its right to rescind at law. Sections 9498-9500, O. S. 1931.

Plaintiff's motion also sought to strike portions of defendant's answer and cross-petition. It appears that the matter sought to be stricken was germane to the issues and was not redundant or irrelevant. For that reason, the court did not err in refusing to strike it. Crump v. Lanham, 67 Okla. 33, 168 P. 43. The assignment of error is without merit.

Judgment affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. BAYLESS, J., absent.

Mr. Vice Chief Justice OSBORN and Mr. Justice RILEY concur specially. They do not agree with the rule stated in paragraph 1 of the syllabus. They observe, however, that this rule has been heretofore announced by the court in Oklahoma Protective Assoc. v. Montgomery, 160 Okla. 135, 16 P. (2d) 135, and National Life & Accident Ins. Co. v. Roberson, 169 Okla. 136, 36 P. (2d) 479, in each of which cases Mr. Justice RILEY registered his dissent. Recognizing that the rule as stated in paragraph 1 of the syllabus has been adopted and followed by the court, they concur therein for that reason and not because it expresses their views. In all other respects they concur in the opinion.