# CHARLESTON.

PHENIX FIRE INS. CO. v. VIRGINIA-WESTERN POWER CO.

Submitted November 6, 1917.    Decided November 13, 1917.

1. PLEADING—*Amendment—Declaration.*

    A trial court not only has the authority, but it is its duty, to permit an amendment to be made to a declaration at any time before trial, if substantial justice will be promoted thereby, and such amendment does not introduce a new cause of action. (p. 301).

2. CONTINUANCE—*Trial—Amendments.*

    If it appears that such amendment surprises the defendant and makes necessary the preparation of additional evidence to meet the matters thus introduced, the court should upon the defendant's motion continue the case. (p. 301).

3. INSURANCE—*Fire Policies—Subrogation—Complaint.*

    Where a suit is brought by an insurance company against one charged with negligently causing the destruction by fire of a building upon which it has a policy of insurance in force, upon the ground that it is subrogated to the rights of the owner of the building against the party responsible for its loss, an allegation in the declaration that it had in force a policy of insurance upon the building at the time of the fire, that the insured furnished proper proofs of loss, and that by reason of these facts it became liable to pay the indemnity provided by the policy, sufficiently alleges that it was under a legal duty to pay such indemnity. (p. 301).

4. NEGLIGENCE—*Actions—Declaration.*

    A declaration in an action for negligence which sets up the acts done or omitted by the defendant, which it is alleged constitute negligence, and the causal connection between such acts and the injury complained of is ordinarily sufficient. (p. 301).

5. EVIDENCE—*Expert's Opinion.*

    It is proper for a witness called as an expert to give his opinion based partly upon the knowledge he has of the subject-matter and partly upon hypotheses stated in the question. (p. 302).

6. WITNESSES—*Examination—Cross-Examination.*

    It is not error to refuse to permit questions to be asked on cross-examination, for the purpose of developing facts in respect to which the witness has not testified in chief. To prove such facts, the witness should be introduced as the witness of the party desiring such testimony. (p. 303).

7. ELECTRICITY—*Electric Companies—Care.*

It is the duty of an electric company, in the construction and maintenance of its wires carrying heavy currents of electricity across the space where telephone or other such wires are strung, to make. approved and effective provision against the communication of its current to such telephone or other wires.   (p. 304).

8. APPEAL AND ERROR—*Report—Harmless Error.*

The refusal of the court to give a proper instruction is not ground for reversing a judgment when it clearly appears that the complaining party was not prejudiced thereby.   (p. 305).

9. TRIAL—*Instructions—Evidence.*

An instruction is properly refused where there is no evidence bearing upon the facts on which it rests.   (p. 307).

10. APPEAL AND ERROR—*Review—Verdict.*

The judgment of a circuit court refusing to set aside the verdict of a jury found upon conflicting evidence will not be reversed by this court, unless it clearly appears that such verdict is repugnant to the right and justice of the case.   (p. 308).

11. NEW TRIAL—*Newly Discovered Evidence—Allowance—"Cumulative Evidence."*

A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained.   (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict.   (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point.   (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits.   (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.   (p. 311).

Error to Circuit Court, Greenbrier County.

Action by the Phenix Fire Insurance Company against the Virginia-Western Power Company.   There was a judgment for plaintiff, and defendant brings error.

*Affirmed.*

81 W. Va.

*J. S. McWhorter* and *F. W. King*, for plaintiff in error.  *.*

*S. N. Pace*, for defendant in error.

RITZ, JUDGE:

Frank A. Houck and George R. Willis, receivers for St. Lawrence Boom & Manufacturing Company, procured from the plaintiff a policy of insurance in the sum of fifteen hundred dollars upon an office building and contents situate in the town of Ronceverte. On the 5th of November, 1914, a fire occurred in the building which practically destroyed the same, as well as part of the contents. The receivers made application to the plaintiff for payment of the indemnity provided by the terms of the policy, and upon proper proof being furnished such indemnity was paid. The policy provides that in case the property insured is destroyed or damaged by the negligence or the wrongful act of a third party, the insurer shall be subrogated to the rights of the insured against such wrongdoer. At the time of the payment of the indemnity the insurance company took a written assignment showing the payment of the indemnity provided by the policy, and the transfer to it of any right of action which the said receivers might have against the party charged with being responsible for the fire. Relying upon the provision in the policy subrogating it to the rights of the insured against any party responsible for the loss or damage, as well as upon such written assignment, the plaintiff instituted this suit for the purpose of recovering the indemnity paid by it, upon the theory that the fire was caused by a telephone wire leading into the building becoming super-charged with electricity by coming in contact with one of defendant's high voltage wires. The trial resulted in a verdict and judgment in favor of the plaintiff for the sum of one thousand dollars.

Numerous assignments of error challenge the rulings of the court below in allowing the plaintiff to amend its declaration, in overruling the demurrer to the declaration as amended, in the admission and rejection of evidence, in giving instructions to the jury on the motion of the plaintiff, and refusing to give certain instructions asked for by the defendant, in overruling the motion of the defendant to set

aside the verdict of the jury because the same was not supported by the evidence, and in refusing to grant a new trial for after-discovered evidence.

When the case was called for trial the plaintiff asked leave to amend its declaration by inserting therein an allegation that by reason of the destruction of the building by fire, and the filing of proper proof of loss with it by the insured, there was an obligation upon it to pay the indemnity provided by the terms of the policy. The defendant objected to the plaintiff being allowed to make this amendment, and the action of the court in allowing it is assigned as error. It fully appears that no new cause of action was introduced by this amendment, but it is simply an amplification of the plaintiff's statement of the cause of action set up in its original declaration. It is not only within the power of trial courts to permit such amendments, but it is the duty of such courts to do so when substantial justice will be promoted thereby. Of course, if it appears that such an amendment surprises the defendant and makes necessary the preparation of evidence to meet a phase of the case not presented by the original declaration, the court would upon the defendant's motion continue the case to permit it to make such necessary preparation. No contention of that kind is made here, and no suggestion was made at the time that the case be continued for that purpose.

The action of the court in overruling the demurrer to the declaration as amended is assigned as error. Two reasons are given to support this contention: first, that the declaration does not show that there was an obligation upon the plaintiff at the time of the fire to pay the amount which it did pay to the receivers; and second, that the acts of the defendant, which it is claimed were negligent, and which resulted in the destruction of the insured building, are not alleged with sufficient particularity. The declaration alleges that the plaintiff at the time of the fire, had a policy of insurance in force upon this building and its contents. It is true it does not allege that there was a liability upon it, by reason of the fact that said policy was in force, to pay the indemnity therein provided at the time of the fire, but it does

allege that by reason of that fact, and of the further fact that the insured filed proper proofs of loss with it, it then and there became liable to pay to the receivers the indemnity provided by the terms of said policy. This is the truth of the situation. In addition to the destruction of the building by fire, it was necessary, in order to fix liability under the policy, to file proper proofs of loss, so that the allegation in the declaration is in strict accord with the proof which was offered in support of it. The declaration further alleges in relation to the negligence of the defendant, which it is charged caused the fire, that the defendant is engaged in furnishing electric light and power to the inhabitants of the town of Ronceverte, and that in doing so it transmits electric current through wires strung along and over the streets of said town; that on the day of this fire it was erecting a pole on the corner of a certain street in that town, from which corner there extended to the insured building two wires which had theretofore been used for the purpose of connecting the telephone in said office building with the telephone system of the Limestone Telephone Company; that the agents and servants of the defendant, in order to make it easier for them to erect said pole, detached these telephone wires from the pole of the Limestone Telephone Company and allowed them to drop across one of its high voltage wires, and that by reason of this contact a heavy current of electricity was transmitted through the telephone wires to the insured building setting the same on fire and destroying it. It occurs to us that this is a sufficiently particular statement of the cause of action. It clearly informs the defendant of the nature of the plaintiff's suit; it gives information as to what the claim is; as to how it arose; and what the negligent act was. Ordinarily a declaration seeking a recovery upon the ground of negligence, that sets up the acts done or omitted by the defendant, which it is claimed constitute negligence, and shows their causal connection with the injury of which complaint is made, is sufficient.

The action of the court in permitting a witness by the name of Pole to testify what would be the result of allowing telephone wires to drop upon a light wire, such as the defendant

company had in Ronceverte at that point, is challenged. The witness Pole was at the time of the fire the superintendent of the defendant company, and was fully cognizant of all its lines and affairs in the town of Ronceverte. The questions complained of were asked him for the purpose of eliciting his opinion as an expert based upon the facts which had been proved and upon his knowledge of existing conditions. It is suggested by the defendant that they state false hypotheses. Upon a careful reading of the evidence we think the hypotheses stated in the questions are fully supported, and we think that Pole was shown to be competent to testify, basing his answers upon his actual knowledge and the hypothetical statements contained in the questions. In the case of *Keenan* v. *Scott*, 78 W. Va. 729, it was held that it was proper for an expert witness to answer questions partly from the knowledge he had of the subject-matter about which he was testifying and partly from hypotheses stated in the questions.

The action of the court in permitting the witness E. J. Allen to answer certain questions is also assigned as error. This witness was in charge of the defendant company's power house at Ronceverte on the day of the fire. He testified that shortly before the fire on that day his apparatus in the power house indicated three short circuits in quick succession; that almost immediately after this disturbance a lineman of the defendant company came to the power house and told him to shut down the engine, that the wires were tangled up; that he thereupon shut down the plant; that about twenty or thirty minutes thereafter another lineman of the defendant company came to the power house and told him that the St. Lawrence Boom & Manufacturing Company's office was on fire, and asked him to sound the fire alarm, which he did. It is contended that it was improper to allow him to state what was said to him by the defendant company's linemen. It sufficiently appears that the statements of these linemen to him, if indeed they can be considered as having any material bearing upon the case, were a part of the *res gestae,* and were properly admitted. *Coyle* v. *B. & O. R. R. Co.*, 11 W. Va. 94; *Sample* v. *Consolidated L. & R. Co.*, 50 W. Va. 472. On cross examination this witness

Allen was asked if he saw the fire at the time he gave the alarm, and stated in answer that immediately after giving the alarm he stepped to the outside of the power house and saw the building on fire. He was then asked what part of the building was burning, but was not permitted to answer, although the record shows that he would have stated that it was the west side of the building. The action of the court in refusing to allow him to answer this question on cross examination is assigned as error. It will be observed that this witness did not testify in chief in regard to the burning building. His testimony was limited to his acts in connection with the defendant company's power plant on that occasion. If the defendant desired to use him as a witness upon the matter it sought to bring out on cross examination, it could have introduced him in its own behalf and asked him the question. It is a matter addressed to the sound discretion of the trial court whether or not a witness on cross examination will be permitted to answer questions touching a subject-matter upon which he was not examined in chief. The refusal of the trial court to permit such answers on cross examination will not sustain an assignment of error for the very good reason, if for no other, that it is within the power of the defendant to introduce the witness himself and ask him the questions, if they are pertinent to the matters involved in the suit. *State* v. *Carr,* 65 W. Va. 81.

The action of the court in requiring the witness J. M. Wilson, who was the defendant company's superintendent at the time of the fire, to answer the question as to whether or not there were guards of any description between the telephone wires and the power wires at the time of the fire is assigned as error. We do not think there was any error in requiring this witness to answer this question. It had been shown that the telephone wires had been unloosed and allowed to drop, and it may reasonably be presumed if there had been such guards between these wires and the power wires they would not have come in contact with the power wires, and the fire would not have occurred. It might be that the plaintiff could rely upon the doctrine of *res ipsa loquitur,* but it was not required to do so. It was entirely

competent for it to prove specifically the acts or failures of the defendant which were responsible for the injury.

The witness Lewis Payne who is connected with the defendant company testified that he made certain examinations of these telephone wires leading into the building at a considerable time after the fire, and found certain conditions existing at that time. On cross examination, being asked whether he knew that certain of these conditions existed at the time of the fire, he undertook to state that he supposed they did, that other people had told him that such was the case. The plaintiff moved to strike out so much of his testimony as gave his suppositions based upon what other people had told him, and the court sustained this motion. There was no error in this. It is true, the witness was introduced as an expert, but the matter involved in this question did not have to deal with his expert knowledge, but simply with the existence or nonexistence of a particular condition at a particular time, and his evidence in this regard was no less amenable to the rule barring hearsay evidence than had he been a witness possessing no expert knowledge.

It is also contended that the court erred in giving to the jury two instructions asked for by the plaintiff. The first instruction complained of told the jury if they believed from the evidence that the wires of the defendant company were by said defendant negligently brought into contact with the telephone wires leading into the building which was destroyed by fire, and that the fire resulted as a consequence of such act, then the plaintiff was entitled to recover. Defendant objected to this instruction because the court called these wires which led from the pole to the office building telephone wires, when in fact they were not in use for telephone purposes. All through the trial of the case they were designated as telephone wires; the jury were fully advised as to their character and as to the fact that they were disconnected at one end, this being a fact not in dispute. In fact the counsel for the defendant in the examination of witnesses refers to them repeatedly as telephone wires. It is not at all material whether they were telephone wires or not. If they were wires leading from that pole into the St. Law-

rence Boom & Manufacturing Company's office, it was negligence for the defendant company to bring its high voltage wires in contact with them without first informing itself that no damage would result from said act.

The court at the instance of the plaintiff also instructed the jury that it was negligence on the part of the defendant to suffer telephone wires to be suspended over its high voltage wires in a position where they might fall on such wires, without exercising reasonable care to provide proper safeguards in the event of such fall; and if they believed that the defendant company did not provide such proper safeguards, and the wires of the telephone company did fall and come in contact with the defendant's high voltage wires, and by reason thereof the building was set on fire, then the defendant company was negligent. The objection to this instruction is based upon the contention that a specific act, that of loosening and dropping the wires, is complained of. This is quite true, but it may be assumed that if proper guards or proper means had been taken to protect the defendant's high voltage wires from contact with the telephone wires at this point, these telephone wires would not have come in contact with its high voltage wires when they were unloosed from the pole. Of course, this instruction practically told the jury to find for the plaintiff if the fire was caused by electricity communicated to the telephone wires from the defendant company's wires, because it was an admitted fact that there were no measures taken to protect the telephone wires from coming in contact with the defendant's wires, and it was a conceded fact that they did so come in contact. The only question referred to the jury was whether or not, by reason of this contact, electricity was communicated to the burning building and caused the fire, and we think this is the only question to be solved in this case.

The action of the court in refusing to give instructions Nos. 5 and 6 offered by the defendant is also the subject of criticism. Instruction No. 5 told the jury that if they believed from the evidence that the money paid by the plaintiff to the receivers of the St. Lawrence Boom & Manufacturing Company was voluntarily paid, or that any part of

it was voluntarily paid, that is, without legal obligation, then
they could not find for the plaintiff as to so much thereof as
was paid without legal obligation.   The evidence in this case
is uncontradicted and is clear that the loss to the building
was far in excess of the one thousand dollars of insurance
upon it.   The evidence is not clear as to what loss was sus-
tained as to the contents of the building.   It is proven that
some of the contents were lost, and that the rest were con-
siderably damaged, but the evidence does not show the ex-
tent of the damage or the value of the property lost.   Of the
fifteen hundred dollars insurance on this building and con-
tents, one thousand dollars was on the building, and five hun-
dred dollars upon the contents.   Before the jury had found
its verdict this instruction might have been proper because
of the fact that the loss and damage to the contents were not
established.   The loss to the building, however, was estab-
lished, as before stated, by uncontradicted and conclusive
evidence, as being far in excess of one thousand dollars, the
amount of insurance thereon, so that the court would have
been entirely justified in telling the jury that if they found
for the plaintiff at all they must find for it at least the sum
of one thousand dollars.   This is all the jury did find.   The
defendant was not prejudiced by the refusal of the court to
give this instruction.

Instruction No. 6 tells the jury that if they believe from
the evidence in this case that the use of the telephone in the
St. Lawrence Boom & Manufacturing Company's office had
been discontinued for a period of several months at the time
of the fire, and that the wire, or wires, leading to the same
were the property of the said receivers, and had not been re-
moved from the streets after the use of said telephone had
been discontinued, then the said receivers were guilty of con-
tributory negligence, which would deny the right of recovery
in this case.   There is no evidence that the receivers owned
or had any property in these telephone wires.   The evidence
in this regard is that sometime prior to the date of the fire
there were three telephones in this building, one private tel-
ephone which communicated with the mill of the St. Law-
rence Company, another private telephone which communi-

cated with its operation at Neola, and the third being connected with the system of the Limestone Telephone Company. The two private telephones were abandoned several years before the fire. It was desired to have a metallic circuit for the telephone connected with the Limestone Telephone Company's system, and to this end the St. Lawrence Company turned over to the Limestone Telephone Company for its use one of the wires which had been used for one of the private telephones, in order that the Limestone Telephone Company might make a metallic circuit for the telephone connected with its system, and this circuit had been in use up until sometime before the fire, when it had been, as the receiver testified, temporarily disconnected from the Limestone Telephone Company system. This is the only way in which it is sought to connect the St. Lawrence Company with the ownership of the telephone line which was in the building at the time of the fire, and it will be seen that this evidence, instead of showing any ownership or control by it over that line, clearly shows that it was as much the property, and as much under the control of the Limestone Telephone Company as any of its other lines. This instruction was properly refused as not being supported by the evidence. In justifying its refusal upon this ground we do not mean to say that it would have been proper in this case had the St. Lawrence Company owned the telephone line. Upon that question we express no opinion.

The next assignment of error is based upon the refusal of the trial court to set aside the verdict of the jury, it being contended that the evidence does not prove that this fire was caused by electricity transmitted to the telephone wires by their contact with defendant's wires. The evidence is in this regard that shortly after two o'clock on November 5, 1914, this building was discovered to be on fire. The first persons to reach the building were Mr. Houck, one of the receivers, Mr. Kessinger, and a man by the name of Loomis. Other people entered the building shortly after they did. It is shown by several witnesses that when they entered the room the insulated wires leading to the telephone had the insulation burned off, and that the paper on the wall over the

telephone up to the ceiling was still burning in places; that the track of the fire appeared clearly from the telephone up the wall, along the telephone wire to the second story, and that it was at that time raging in the second story. These witnesses immediately removed the furniture and such property as could be removed from the building. The fire company appeared upon the scene in a very short time and began to discharge water from their hose into the upstairs windows over the office, standing upon the ground for this purpose at first, but subsequently procuring ladders and by that means ascending to the windows. The result of this was that the fire in the front part of the building was extinguished before this part of the building was entirely destroyed, but the fire in the back part of the building continued to rage until it had reached a stage beyond the control of the firemen. It is further shown that there had been no fire in this building on that day, and that there had been no person in the building for several hours before the fire. The building was a tin roof building, and it clearly appears that the fire did not catch in the roof from sparks from a locomotive. It is also shown on the day in question that the telephone wires leading to this building were taken down from a pole at the point at which they were disconnected from the Limestone Company's system, and were allowed to drop upon one of the high voltage wires of the defendant company. The time at which this happened is fixed, not only by one of the linemen of the defendant, but by the defendant's superintendent who was in charge of the men doing this work. They both state that these wires were taken down, and in taking them down they were allowed to drop, or at least one of them was allowed to drop upon one of the high voltage wires of the defendant company; that shortly after this happened the alarm of fire was given, and it was observed that the St. Lawrence Company's office was burning. The defendant company's employe in charge of its power house corroborates this. The defendant company contends that this fire was not caused in the manner charged by the plaintiff for three reasons: First, because a witness by the name of Eagle testified that the fire alarm was sounded

before he saw the blaze which resulted from the contact of the two wires; second, because the rear end of the building furthest away from the telephone was the worst burned; and third, because it is shown that only one of the telephone wires came in contact with the defendant's high voltage wire, and that this could not cause a fire in the building. It is true the witness Eagle states that he heard the alarm of fire; that he started out of his store which was some little distance from the St. Lawrence Company's office, and that while he was coming down this street he saw a flash of fire, but he is not at all certain exactly where this was, or that it was caused from the contact of the telephone wire with the defendant company's wire. Evidently it was not, or else Eagle is mistaken as to the time that he saw it, for the reason that the defendant company's own superintendent, who was in charge of the work, and its lineman, who was doing the work, testified that this telephone wire was loosened and dropped onto the high voltage wire twenty or thirty minutes before the fire alarm was sounded. This evidence of the people who were doing the work must be given very much more weight than the evidence of a witness who had no connection with the transaction. It is true that the rear of the building furthest away from the part in which the telephone instrument was located was entirely destroyed and burned to the ground, while the front part of it, where the telephone was located, was burned in the top, but the office room not so severely damaged. This, it is contended, shows that the fire did not start at the telephone. Undoubtedly this is evidence indicating that the fire originated in the rear of the building, but we have the positive evidence of several witnesses who saw this fire burning up the telephone wires to the second floor before the fire was in the rear of the building at all, and then we have the further evidence that when the firemen came they threw the water on the fire through the upstairs windows in front, thus getting the fire in the front of the building under control and confining it to the rear. This we think clearly accounts for the fact that the rear of the building was burned to a much greater extent than the front of it. It is claimed that it appears from the evidence that only one

of the telephone wires, came in contact with the defendant's'
high voltage wires, and that it also appears from the evi-
dence that this could not have caused the fire in the tele-
phone building. It is true, one witness, the defendant's super-
intendent, does testify that only one wire came in contact
with the defendant's high voltage wire. The other witnesses
do not disclose from their evidence just how many of these
wires came in contact with this high voltage wire. It seems
that both of the telephone wires were unloosed from the pole
and were thrown down, and it is not apparent why one of
them came in contact with the light wire and the other did
not. But assuming that only one of these telephone wires
did come in contact with the high voltage wire of the de-
fendant, it by no means appears that this might not have
produced the fire. In fact the witness Pole testified that
this might have caused a fire in the building of the St.
Lawrence Company, but it would not be so likely to have
caused a fire as if both of the telephone wires had come in
contact with the power wire. From a very careful review of
the evidence in this case we are convinced that the verdict
of the jury is supported by a decided preponderance thereof.

A new trial was also asked upon the ground of after-dis-
covered evidence. The affidavits of L. F. Loomis and John
Peters, Jr., were offered showing certain facts claimed to be
known by them, which the defendant claims would likely
change the result upon another trial. Loomis states in his
affidavit that he was the first man to get to the building
after the fire; that he was a fireman on a C. & O. yard engine
which was standing in front of the building when he dis-
covered the fire, and that he gave the alarm by blowing the
engine whistle; that he ran to the building and broke open
the door; that at that time there was no fire in the front
room; that he noticed particularly the corner where the
telephone was and saw no fire, either above or below. He
says in his affidavit that the back room was used as a junk
room for mill material, and that the basement was to his
knowledge used as a bunk house and poker joint for comers
and goers on the road. Assuming that Loomis's evidence is
material, no reason is given why it was not procured and
introduced on the trial of the case. It is shown by several

of the witnesses that he was one of the first men to get to the building, and this was ·well known to everybody interested in the case. The attorney for the defendant says that he knew that Loomis was an important witness, or at least he believed so, and that he made investigations to find out all that he could about this fire; that he went to Ronceverte on several occasions to do so, but found that Loomis was not in town, and he did not get to see Loomis until after the trial of the case. The trial of the case was not had until twenty months after the fire, and no explanation is given for the failure of the defendant company to locate Loomis and take his testimony during that twenty months. The witness John Peters, Jr., if his evidence can be considered as material, was actually introduced by the defendant as a witness upon the trial of the case. No reason is given why the evidence upon which it is now sought to base a motion for a new trial was not elicited from the witness when he was on the witness stand, except that counsel states that he did not know that the witness knew these things. Clearly this presents no ground for granting a new trial because of after-discovered evidence. In order to sustain a motion for a new trial for after-discovered evidence, it must be made to appear that such evidence was discovered since the trial, and from the affidavit of the new witness what such evidence will be, or its absence satisfactorily explained. It must also appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing the evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. It must also appear that such evidence is new and material, and not merely ˙cumulative, and by cumulative evidence is meant additional evidence of the same kind to the same point. The new evidence offered must also be such as ought to produce an opposite result at a second trial on the merits, and it must also be such evidence as that the sole object thereof is not to discredit or impeach a witness on the opposite side. *Halstead* v. *Horton*, 38 W. Va. 727. The showing made on the motion for a new trial for after-discovered evidence falls far short of these requirements.

· Finding no error in the judgment complained of, the same is affirmed.        *Affirmed.*