JAMES LEE CREMEANS, *An Infant, etc., by His Next Friend,* HARRY ALLEN CREMEAN,

*v.*

EDMOND FRANKLIN MYERS

(No. 10353)

Submitted September 25, 1951. Decided October 9, 1951.

*Jenkins & Jenkins,* for plaintiff in error.

*William W. Roberts,* for defendant in error.

RILEY, JUDGE:

James Lee Cremeans, an infant under twenty-one years of age, who sues by his next friend, Harry Allen Cremeans, instituted this action of trespass on the case in the Circuit Court of Cabell County against the defendant, Edmond Franklin Myers, to recover damages for personal injuries received as a result of a collision between an automobile driven by the defendant and a motorcycle operated by said infant. This writ of error is prosecuted to a judgment in favor of the plaintiff in the amount of seventeen hundred fifty dollars, based upon a jury verdict.

The declaration alleges in part: "The said plaintiff says that on account of and as the proximate result of said injuries, hurts and disabilities inflicted as aforesaid upon the plaintiff by the defendant, he was unable to work at his usual vocation for several months thereafter,

and that by reason thereof lost his wages in the sum of more than $500.00, and that by reason of the injuries received as aforesaid his earning capacity in the future will be impaired."

The alleged injury occurred on Twentieth Street in the City of Huntington on June 2, 1949. The plaintiff testified that three months prior to the day he was injured, he had returned to Huntington from Florida, where he had been staying for a year; that, upon his return to Huntington, he went to work for General Department Stores in Huntington, and was laid off one month before the accident; that General Department Stores paid him fifty-two dollars every two weeks for work, which required him to lift heavy objects; that, as his arm was in a cast for four months after the accident, he was unable to do any work during that period; and that at the time of the trial, which was eight months after he had received his injury, he could not do any heavy work, as his arm was too weak. In other particulars his testimony is as follows:

"Q. And what kind of work did you do there?

"A. I worked in the trucking department.

"Q. Was that heavy work?

"A. Yes, sir.

"Q. Was it necessary to lift heavy objects?

"A. Yes, sir."

On cross-examination he testified:

"Q. And did you work all of that time? That three months' period, James? I think you said you had been laid off about a month before the accident. So those two months after you got back, was that how long you worked for the General Department Stores?

"A. I was laid off about a month before the accident.

"Q. Well, I say, had you worked from the time you got back from Florida for two months, up to a month before the accident?

"A. Yes, sir.

"Q. For General Department Stores?

"A. Yes, sir."

The foregoing evidence, which was the only evidence in the case to support plaintiff's declaration as to his earning capacity and loss of five hundred dollars in wages, was considered by the jury in determining plaintiff's loss of earnings.

After the verdict of the jury and before the entry of the judgment thereon, defendant moved the court to set aside the verdict of the jury, and award him a new trial on the basis of newly discovered evidence. In support of this motion affidavits of R. M. Collins, Comptroller of General Department Stores; defendant; and John E. Jenkins, defendant's attorney, were filed with the court.

Collins' affidavit stated that plaintiff was not employed by General Department Stores at any time during the year 1949, and was, therefore, not paid any wages or salary during that year.

Defendant's affidavit stated that plaintiff, prior to the institution of this action, had consulted Joseph Fitchett, an attorney at law, in regard to his claim against the defendant, and was advised by said attorney that plaintiff discontinued attending school and was unemployed at that time; that after being advised by his counsel that plaintiff, in his declaration, was claiming loss of wages, the defendant between the time of the filing of plaintiff's declaration and the trial of the action, diligently endeavored to ascertain whether plaintiff had been employed prior to the institution of the action; and that the only information defendant was able to obtain was that plaintiff had not been employed.

The affidavit of John E. Jenkins, defendant's attorney,

stated that affiant had requested defendant to endeavor diligently to ascertain if plaintiff had been employed prior to his injury; and that defendant advised affiant that he had done so and was unable to learn whether plaintiff had been employed prior to his accident; that plaintiff's testimony at the trial that he had been employed prior to the time of his injury by General Department Stores was a complete surprise to affiant; that during the trial, which lasted only one day, affiant communicated with the personnel director of General Department Stores, in Huntington, in an effort to determine whether plaintiff had been employed by that company, but was advised that he would be unable to furnish information in regard thereto until there was an opportunity for a check of its employment records for the year 1949, which could not be done immediately; that it was not until the conclusion of the trial that affiant was able to obtain from General Department Stores information that plaintiff had not been employed by that company during the year 1949; that prior to the trial the affiant Jenkins had no information whatever that infant plaintiff claimed or would testify that he had been employed by General Department Stores; and that affiant firmly believes that the false testimony of plaintiff at the trial in regard to his employment by General Department Stores and the wages earned and the heavy work which was required to be done by him, very materially influenced the jury, so that if defendant had been able to prove the true state of facts in regard to plaintiff's unemployment, such proof would have resulted in a verdict for defendant, or at least would have resulted in a much lower verdict for plaintiff, so that a retrial would produce a different result on the merits of the case.

To these affidavits plaintiff filed no counter-affidavit, but, notwithstanding this fact, defendant's motion for a new trial was overruled and judgment was entered for the plaintiff on the verdict.

The sole question presented by this record is: Did the trial court err in overruling defendant's motion to set

aside the jury verdict and grant defendant a new trial on the ground of newly discovered evidence?

In this jurisdiction the right to a new trial on the ground of newly discovered evidence is greatly restricted, for the purpose of keeping litigation from being unnecessarily prolonged. The general rule is stated in *Halstead* v. *Horton,* 38 W. Va. 727, 18 S. E. 953, and *Phenix Fire Insurance Company* v. *Virginia-Western Power Company,* 81 W. Va. 298, 94 S. E. 372. Point 11 of the syllabus to the last-mentioned case reads: "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Thus, it has been held that a new trial will not be granted for newly discovered evidence, which impeaches or discredits a witness on the opposite side, and which is not likely to produce a different result. *Wadkins* v. *Digman,* 82 W. Va. 623, 96 S. E. 1016; *Gibbard* v. *Evans,* 87 W. Va. 650, 106 S. E. 37; *Gray* v. *Powell,* 102 W. Va. 440, 136 S. E. 40. These rules governing the granting of a new trial on the ground of after-discovered evidence should, indeed, be highly restricted because of the policy underlying them. In our opinion, however, this case may be distinguished from the foregoing cases. In the first instance the infant plaintiff, James Lee Cremeans, gave the only testimony in the case

bearing on the impairment of his earning capacity, and this was in support of the allegations of his declaration, which charge the loss of past, as well as future earnings. His testimony in this regard was clearly false, as shown by the affidavit of R. M. Collins, the Comptroller of General Department Stores, of Huntington, in which he stated that the records and books of said company show that the infant plaintiff, James Lee Cremeans, was not employed by General Department Stores at Huntington, at any time during the year 1949, "and so was not paid any wages or salary by said General Department Stores Company during the year 1949." This affiant was an uninterested party: his affidavit contradicts materially plaintiff's testimony bearing on his employment during the year 1949 at General Department Stores in Huntington. The affidavits of the defendant, Edmond Franklin Myers, and his attorney, John E. Jenkins, show clearly that due diligence was exercised from the time this action at law was instituted until and during the trial to obtain the evidence disclosed by the Collins affidavit.

In *Griffith* v. *American Coal Company,* 75 W. Va. 686, 84 S. E. 621, the negligence of the defendant was predicated upon the employment in a coal mine of an infant plaintiff, allegedly under the statutory age limit of fourteen years. The record discloses that at the time of the infant's employment, he and his mother and father had represented him to be fourteen years of age, and that defendant was surprised by the testimony of the father and mother to the effect that the infant plaintiff was under fourteen years of age. The record in that case further discloses that the superintendent of the defendant coal company had pursued all avenues of inquiry known to him to ascertain infant plaintiff's age. He, however, made no inquiry of the father and mother as to the infant's place of birth, and this fact, being disclosed on examination of the Griffiths at the trial, the superintendent sent a messenger into the country where the infant plaintiff had been born, and learned from a Dr. Haller, who attended the infant's mother at the time of his birth, that

if Dr. Haller's record was correct, plaintiff was over fourteen years of age at the time of his employment and of the injuries complained of. On a motion for a new trial, Dr. Haller and his records were introduced. On the basis of this after-discovered evidence this Court held that a new trial should be granted.

The *Griffith* case differs from the instant case only in that the age of the infant plaintiff in the *Griffith* case was necessarily determinative of liability, whereas, in the instant case the newly discovered evidence bears only on the amount of the verdict. However, we think the difference between the two cases is not material, and this case is sufficiently within the exception to the general rule governing newly discovered evidence stated in the *Griffith* case, and that we should, in the interest of justice, reverse the judgment of the Circuit Court of Cabell, set aside the verdict, and grant the defendant a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*