295 S.E.2d 917

## W. VA. DEPARTMENT OF HIGHWAYS

v.

## G. Frank BRUMFIELD, et al.

### No. 15309.

Supreme Court of Appeals of West Virginia.

Sept. 20, 1982.

Joseph Martorella, Huntington, Daniel Duval, Legal Div., Dept. of Highways, Charleston, for appellee.

Kenneth H. Fisher, Huntington, for appellants.

MILLER, Chief Justice:

In this case, Frank and Francis Brumfield appeal the final decision of the Circuit Court of Cabell County, in which they were awarded $75,000 for certain property condemned by the West Virginia Department of Highways. They were denied their motion for a new trial on the ground of newly-discovered evidence. We are called upon to determine whether the new evidence, that the Department of Highways' appraiser's testimony was grossly erroneous and misleading, is a sufficient basis to award a new trial. We also consider the prohibition against any discovery in eminent domain cases arising from West Virginia Rule of Civil Procedure 81(a)(6), and determine that it should be modified.

The appellants are the former owners of three lots located in Huntington, West Virginia. The lots are adjacent and have a total of four structures located thereon, consisting of three dwelling houses and a store with a second-floor apartment. The West Virginia Department of Highways, exercising its eminent domain powers, condemned the three lots for the purpose of constructing W. Va. Route 106. The taking of the property was March 5, 1979, and a Commissioners' Hearing was held on April 20, 1979. The Commissioners' finding that the property was worth $75,000 was excepted to by both parties.

On June 25, 1980, the parties presented evidence as to the value of the condemned properties to a Cabell County Circuit Court jury. Frances Brumfield testified on behalf of appellants and presented the testimony of Gideon Dean, a real estate broker. They testified that the total fair market value of the appellants' properties was $183,000 and $159,600, respectively. The Department of Highways presented the testimony of appraiser Ted Golden.

Golden testified that the value of the appellants' three parcels of property was $50,500. He stated that he had reached his opinion by comparing sales of other property in the same vicinity as the appellants'. Although Golden indicated that he investigated approximately thirty sales, he testified as to four particular sales: the Reese to Riffe sale, the Welch to Bays sale; the Garrin to Brunton sale, and the Mynes to Mayes sale. For each sale, Golden testified that he spoke with the buyer and that the sale was an arms-length transaction, and in three cases, that the houses were in good condition, superior to that of the appellants' structures. Upon comparing the sale prices and the houses' conditions, Golden arrived at his opinion of the appellants' property's value.

After the trial, an investigation into Golden's testimony was made, and, upon that investigation, the appellants submitted deeds and affidavits representing newly-discovered evidence controverting and discrediting Golden's testimony. The affidavits and deeds represented the following,

all in contradiction to Golden's testimony: (1) in the Welch to Bays sale, Golden had never spoken with Bays concerning his purchase, and the condition of the house when sold to Bays was poor; (2) in the Garrin to Brunton sale, the buyers had purchased the property at a public sale by auction at the Cabell County Courthouse and the sellers were in fact three special commissioners; (3) in the Mynes to Mayes sale, the applicable deed contained a reservation affecting the property, the property's condition was "terrible" and the sale was made in order to settle an estate.[1] A counteraffidavit was submitted by Golden, although his statements do not directly controvert or explain any of the appellants' new evidence discussed above.

The purpose of the appellants' affidavits and deeds, as well as the thrust of their argument on the motion for new trial, was that Golden's testimony as to value violated recognized legal principles in eminent domain cases. First, where comparable sales are used to establish market value, there must be some comparability between the property. As we have stated in Syllabus Point 6 of *State Road Commission v. Ferguson*, 148 W.Va. 742, 137 S.E.2d 206 (1964): "In a condemnation proceeding, evidence of the price paid for similarly situated and comparable property is admissible in determining the value of the property taken."

Second, market value has, among its core factors, the concept of a willing buyer and seller, and also that the sale is unaffected by compulsion of any kind. This latter rule is set out in Syllabus Point 5 of *Wheeling Electric Company v. Gist*, 154 W.Va. 69, 173 S.E.2d 336 (1970):

"The market value in such case is the price for which the land could be sold in the market by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, and unaffected by compulsion of any kind. Pt. 2, sylla-

bus, *Guyandot Valley R'y Co. v. Buskirk*, 57 W.Va. 417 [50 S.E. 521]."

Recently, in *West Virginia Department of Highways v. Mountain Inc.*, 167 W.Va. 202, 279 S.E.2d 192 (1981), we had occasion to discuss a related rule concerning whether the price paid for the condemned property itself could be shown in evidence. We adopted this statement from 5 *Nichols on Eminent Domain* § 21.2 (3rd rev. ed. 1979):

" 'The general rule is that evidence of the price paid for property which is the subject of appropriation proceedings is admissible, if the following conditions are satisfied:

'(a) The sale must be bona fide;

'(b) The sale must be voluntary, not forced;

'(c) The sale must have occurred relevantly in point of time; and

'(d) The sale must cover substantially the same property which is the subject of the appropriation action.' " (Footnote omitted)

It is apparent that, with the exception of a slight modification to the introductory paragraph and to subparagraph (d), this rule is the same as our rule involving utilization of comparable sales of other property. We, therefore, restate the rule as modified:

The general rule is that evidence of the price paid for property which is comparable to the property being condemned is admissible, if the following conditions are satisfied:

(a) The sale must be bona fide;

(b) The sale must be voluntary, not forced;

(c) The sale must have occurred relevantly in point of time; and

(d) The sale must cover property which is comparable to the property being condemned.[2]

---

1. The newly discovered evidence concerning the Riffe sale is not discussed or considered as it lacked a supporting affidavit.

2. We recognize, as we did in *West Virginia Department of Highways v. Mountain, Inc., supra*,

and other cases, that the question of the admissibility of particular comparable sales rests within the sound discretion of the trial judge. To the extent however that *West Virginia Department of Highways v. Sickles*, 161 W.Va. 409,

The Department of Highways argues that the trial court was correct in refusing to overturn the jury's verdict based on the newly-discovered evidence. One of its arguments is that the material was primarily for purposes of impeachment, and the Department cites our traditional rule that "[a] new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, in part, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894), *rev'd on other grounds, State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955). *See also State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979); *State v. Farley*, 143 W.Va. 445, 104 S.E.2d 265 (1958); *Phenix Fire Insurance Co. v. Virginia-Western Power Co.*, 81 W.Va. 298, 94 S.E. 372 (1917).[3]

We have concluded previously that even though the newly-discovered evidence is of an impeaching nature, it may be sufficient to award a new trial where the witness sought to be impeached by the newly-discovered evidence was the principle or sole witness for the opposing party. In *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777, 784 (1977), after reviewing authorities in other jurisdictions, we summarized the rule in this fashion: "[I]n most such cases where relief is granted, the witness whose testimony is impeached by the newly-discovered impeachment evidence is the principle or sole witness for the government without whose testimony there would be no conviction." (Footnote omitted)

We applied much the same rule in a civil action, *Cremeans v. Myers*, 136 W.Va. 157, 67 S.E.2d 28 (1951), where the plaintiff was seeking to recover damages for personal injuries. He testified that his injuries had precluded his ability to resume his employment in a department store after the accident and he had thereby lost a considerable amount of wages. After the trial the defendant produced an affidavit from the store owner to the effect that the plaintiff had not been employed for the company prior to the accident. We granted the motion for new trial based on the newly-discovered evidence emphasizing that "[the] plaintiff, James Lee Cremeans, gave the only testimony ... of his earning capacity, and this was in support of the allegations of his declaration, which charge the loss of past, as well as future earnings. His testimony in this regard was clearly false...." 136 W.Va. at 162–63, 67 S.E.2d at 31.

*Cremeans* relied on our earlier case of *Griffith v. American Coal Co.*, 75 W.Va. 686, 84 S.E. 621 (1915), which involved a suit against an employer of an infant plaintiff allegedly under the statutory age of fourteen. The employer had defended on the theory that both the plaintiff and his mother and father had represented his age was over fourteen at the time he had applied for employment. At trial defense counsel learned where the plaintiff was born. After trial the doctor, who had attended his birth, was located and gave an affidavit along with his records which indicated that the plaintiff was over fourteen at the time he was employed. We granted

---

242 S.E.2d 567, 570 (1978), suggests that questions such as size, topography, value of improvements and proximity of the sale date go *solely* to the weight of the evidence rather than the admissibility of comparable sales, such language is disapproved. Obviously, at some point, the disparity of these factors with regard to the condemned property would be so significant as to render the comparable sales inadmissible.

**3.** These cases recognize our traditional test for setting a verdict aside based on newly-discovered evidence as set in Syllabus Point 1 of *Halstead v. Horton, supra:*

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side."

the new trial based on this newly-discovered evidence and stated in Syllabus Point 8:

"The discovery of such legal and competent evidence after the trial of this case, considered in connection with other evidence offered on the motion of defendant for a new trial, and considered also in connection with the evidence adduced on the trial, and the proof of due and reasonable diligence on the part of defendant to discover such new evidence, as shown by the record, constituted good ground for setting aside the verdict and awarding defendant a new trial."

In *Becker v. Wheeling Ice & Storage Co.*, 116 W.Va. 664, 182 S.E. 763 (1935), we permitted a new trial, without any lengthy discussion of the applicable legal principles, based on affidavits that demonstrated children had been playing in an alley. These affidavits contradicted the truck driver's trial testimony that he saw no children playing in the alley before he backed into the infant plaintiff.

The Department of Highways also argues that such newly-discovered evidence, even if utilized at trial to impeach its appraiser, would not have changed the result of the case, as is also required for the successful assertion of a motion for new trial based on newly-discovered evidence.[4] We recognize, however, that in an eminent domain case the ultimate issue is the value of the property taken and, therefore, from a liability standpoint, the condemning authority always "loses" the case in the sense that it must pay some amount of damages to the landowner. Consequently, the rule that newly-discovered evidence "must be such as ought to produce an opposite result at a second trial on the merits" has little direct applicability in an eminent domain case. It does retain some vitality, however, in the sense that if the newly-discov-

ered evidence would not have any substantial impact in increasing the amount of the verdict, then it need not be considered.

In the present case with the jury verdict at $75,000, the State's appraiser at $50,500 and the lowest landowners' value at $159,600, the jury verdict clearly favored the State's position. We cannot conclude that had the landowner been able to impeach the State's appraiser through the newly-discovered evidence the jury would not have returned a substantially higher award for the landowner. We also consider it significant that the newly-discovered evidence covered three out of the four parcels that the appraiser based his specific comparable sales testimony upon, thus affecting substantially all of the appraiser's testimony.

In *Cremeans v. Myers, supra,* this Court permitted a new trial based solely on newly-discovered evidence that impeached only a part of the damage award—the amount of the plaintiff's wage loss.

■ In light of the foregoing cases, we conclude that where, in an eminent domain suit, it can be shown by new evidence discovered after the trial (which evidence could not with diligence have been obtained before the trial verdict), that the State's sole appraiser based a substantial portion of his comparable value testimony on properties which had not been the subject of voluntary or willing sales or upon properties which were materially and substantially not comparable to the condemned property, the landowner is entitled to a new trial.[5]

At the heart of the problem in this case is the fact that condemnation cases are not subject to any of the discovery provisions in our Rules of Civil Procedure (RCP).[6]

---

4. The full statement of the rule is set out in note 3, *supra.* The particular part of the rule involved here is: "(4) The [newly-discovered] evidence must be such as ought to produce an opposite result at a second trial on the merits."

5. In view of the right of pretrial discovery being accorded in the subsequent portion of this opinion, it is obvious that this rule will have little applicability in future condemnation cases. The parties, by the exercise of diligence in dis-

covery, will be able to obtain the identity of the comparable sales and investigate the nature of the sales prior to trial.

6. Rule 81(a)(6) provides: "Eminent Domain— Rules 5(b), 5(e) and 80 apply, but the other rules do not apply to proceedings to condemn real or personal property." Until 1951, Rule 81(a)(7) of the Federal Rules of Civil Procedure provided: "In proceedings for condemnation of property

Consequently, the situation, as evidenced by this case, arises where neither side in a condemnation case has any ability to determine what theory the other party will advance at trial nor any advance knowledge of what the general fact basis will be for the other party's expert testimony.[7] Because a condemnation case centers primarily over the value of the property taken, it has historically been a case in which experts in property values are called upon to give testimony.

Prior to the 1970 revisions of the discovery rules contained in Rules 26 thru 37 of the Federal Rules of Civil Procedure, federal courts had recognized a right of discovery on experts in condemnation cases. The leading case is perhaps *United*

*States v. Meyer*, 398 F.2d 66 (9th Cir. 1968), which contains an extensive review of both federal and state cases dealing with discovery in condemnation cases and includes numerous citations to cases and articles on the subject.[8] At issue in *Meyer* was the extent of discovery that could be obtained and, particularly, whether discovery depositions could be taken under the then existing Rule 30 of the Federal Rules of Civil Procedure. The court in *Meyer* concluded that discovery depositions could be taken and fashioned a rather broad discovery rule. However, since the *Meyer* case, the Federal Rules of Civil Procedure have been amended and the right of discovery against experts has been carefully delineated as evidenced by Rule 26(b)(4) of the Federal Rules of Civil Procedure.[9]

under the power of eminent domain, these rules govern appeals but are not otherwise applicable." In 1951, Rule 81(a)(7) was abolished and condemnation procedures were brought into the Federal Rules under a newly promulgated Rule 71A. *See generally* 7 *Moore's Federal Practice* (Part II) (1982 ed. p. 71A–31, *et seq.*).

**7.** Another example is *West Virginia Department of Highways v. Adams*, 170 W.Va. 399, 294 S.E.2d 252 (1982), in which it would appear that the Highway Department was proceeding on the theory that it had condemned only for a temporary construction easement, but the landowner at trial introduced evidence of substantial permanent damage which the Department may not have anticipated. Obviously, if some pretrial discovery had been permitted, the Department could have been prepared to meet the permanent damage issue.

**8.** *United States v. Meyer, supra,* at 69, summarized the problem as follows:

"Because land appraisal is complex and technical, usually evidence on the issue of value consists principally of the opinions of opposing experts. These opinions are notoriously disparate. The weight to which an appraiser's opinion testimony is entitled turns upon the validity of the appraiser's premises, procedures, and theories; the soundness of his factual determinations; the comparisons he has made; the methods he has followed, and the formulae he has applied.

\* \* \* \* \* \*

"Since this material will constitute the substance of the trial, pretrial disclosure is necessary if the parties are to fairly evaluate their respective claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examination and rebuttal."

**9.** The pertinent portion of Rule 26(b)(4) provides:

"Trial Preparation: Experts.—Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

"(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

"(C) Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(A)(ii) of this rule the court may require, and with respect to discovery obtained under subdivi-

We adopted an identical provision as to experts in our Rule of Civil Procedure 26(b)(4) in 1978. We note that the provisions of Rule 26(b)(4) are restrictive in scope in that they basically provide discovery through the use of written interrogatories and limit the availability of other discovery techniques to the trial court's discretion.

There is uniform agreement that one of the salutary purposes of discovery procedures is to enable parties to obtain relevant information about the other party's case. This is designed to prevent the trial from becoming one of ambush. In addition, pretrial discovery permits each party to make a realistic evaluation of his case in light of the discovery obtained from the opposing party, promoting the possibility of settlement. Settlements will, of course, decrease the legal costs and fees to all parties and will result in judicial economy, all of which are desireable goals in any legal system. Finally, pretrial discovery also serves to expose spurious and exaggerated claims.

Beyond these general reasons, we believe it is appropriate to extend a limited right of discovery in a condemnation case for the reasons outlined by the Florida Supreme Court in *Shell v. State Road Department,* 135 So.2d 857, 861 (Fla.1961):

"It must be borne in mind that in a condemnation proceeding the property of the land owner is subject to taking by the condemnor without the owner's consent. The condemnee is a party through no fault or volition of his own. Our Declaration of Rights, Section 12, Constitution of the State of Florida, F.S.A., makes it incumbent upon the condemnor to award 'just' compensation for the taking. In view of this constitutional mandate, the awarding of compensation which is 'just' should be the care of the condemning authority as well as that of the party whose land is being taken.[10]

"Unlike litigation between private parties condemnation by any governmental authority should not be a matter of 'dog eat dog' or 'win at any cost'. Such attitude and procedure would be decidedly unfair to the property owner. He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhaustible power of taxation. Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government's 'unlimited resources'."

Most jurisdictions either by statute or by the adoption of rules of civil procedure now accord some right of discovery in condemnation cases. *Federal Procedure, L.Ed., Comperator:* Federal Rules of Civil Procedure and State Civil Procedural Rules, 352–54 (1981). In some jurisdictions, discovery has been accorded by courts adopting a broad reading of general discovery rules or statutes. *E.g., Ment v. Ives,* 27 Conn.Super. 239, 235 A.2d 330 (1967); *City of Bloomington v. Quinn,* 114 Ill.App.2d 145, 252 N.E.2d 10 (1969); *State ex rel. Pack v. West Tennessee Distributing Co.,* 58 Tenn. App. 306, 430 S.W.2d 355 (1968); *State v. Circuit Court for Waukesha County,* 15 Wis.2d 311, 112 N.W.2d 686 (1961).

We have in the past operated under our inherent rule-making power contained in Sections 3 and 8 of Article VIII to make a procedural rule in order to provide a just and orderly procedure for the benefit of litigants. *E.g., State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980) (procedural joinder of offenses rule); *State v. Byrd,* 163 W.Va. 248, 256 S.E.2d 323 (1979) (procedural rule on access to presentence report); *State v. Gary,* 162 W.Va. 136, 247 S.E.2d 420 (1978) (hearing procedure for bail); *Stern Bros. Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977) (recusal procedure for judges). *See generally West Virginia State Bar v.*

---

sion (b)(4)(B) of this rule the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert."

**10.** Section 9 of Article III of the West Virginia Constitution provides in part: "Private property shall not be taken or damaged for public use, without just compensation."

Earley, *144 W.Va. 504, 109 S.E.2d 420 (1959).*

 Believing as we do that the ends of justice will be promoted by permitting a limited right of discovery in eminent domain cases and recognizing that such discovery has been permitted in many other jurisdictions, the discovery rights contained in Rule 26(b)(4), R.C.P., are extended to eminent domain cases, such rights are enforceable through the discovery sanctions contained in Rule 37, R.C.P.

Because the appellants' motion for new trial based on newly-discovered evidence should have been granted, the judgment of the Circuit Court of Cabell County is reversed and this case is remanded for a new trial.

Reversed and Remanded.