No. 14-0381 - <u>West Virginia Department of Transportation, Division of Highways v. Western Pocahontas Properties, L.P.; WPP, LLC; and Beacon Resources, Inc.</u>

**FILED**

**June 17, 2015**

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

In this case, the majority has decided to treat the State like a child, scolding it for not adequately preparing for trial and then allowing it to have a "do over." Despite the fact that the new points of law set forth in the majority opinion do not support a finding that the trial judge erred by refusing to give the State's proposed jury instruction, the majority nonetheless reaches that conclusion and remands this case for a new trial. In doing so, the majority provides unprecedented, detailed guidance for the retrial of this matter in an undisguised effort to ensure that the State is not slapped with another twenty-four million dollar verdict. Because it is clear that the trial court did not commit reversible error by refusing to give an obviously erroneous instruction and because this Court should not be dispensing legal advice to parties, I dissent from the majority's decision in this case.[1]

---

[1]As discussed in the majority opinion, the State also asserted in this appeal that the trial court committed reversible error by excluding its expert's testimony concerning sales of comparable mining properties. I agree with the majority's finding that the trial court properly excluded this testimony because the record clearly shows that the expert's opinion was not relevant or reliable. I dissent because of the majority's ultimate decision to set aside the verdict and remand this case for a new trial based upon an unsupported and erroneous conclusion that the trial court erred by refusing to give the State's proposed jury instruction.

1

The proceedings below focused primarily upon the fair market value of Beacon's interest in the subject property, *i.e.*, its right to extract and sell the coal, which was thwarted as a result of the State's decision to take the land for the construction of Corridor H. When the State initiated this condemnation proceeding, Beacon was actively surface mining the property. As a result of the State's taking, Beacon was forced to cease its mining operations and go out of business. During the trial, the State, relying upon cases from 1885 and 1919,[2] proposed that the following instruction be given to the jury:

> You are instructed that in determining whether the residue of the property is damaged or injured, you may consider damage to the land, but you *may not consider any lost profit* or damage or injury to any business thereon, because such damages depend on contingencies too uncertain and speculative to be allowed. (emphasis supplied)

The trial court found the instruction would apply if the business being operated on the property could be relocated, as would be the case with a gas station, factory, or store. However, because the property at issue–the coal–and its location constituted the business, the trial court determined that Beacon was entitled to the value of the property taken, "measured by the dollar amount for which [it] could sell it." *Whitney Benefits, Inc. v. United States*, 18 Cl. Ct. 394, 409 (1989). Accordingly, the trial court refused to give the proposed jury instruction.

---

[2]*See Gauley & Eastern R. Co. v. Conley*, 84 W.Va. 489, 100 S.E. 290 (1919); *Shenandoah Valley R. Co. v. Shepherd*, 26 W.Va. 672 (1885).

While the general rule in the law of eminent domain has been that business profits are not an indicator of the value of land because the success of the business depends on the skill of the operator and the efficiency of the operation, "courts [now] recognize an exception to this rule when the profits proceed directly out of the land condemned, thereby contributing to its intrinsic value, as opposed to a business being conducted on the land." 8 *Nichols on Emminent Domain* § G-14F.03 (3ʳᵈ ed. 2015). For example, in *State Highway Commission v. Jones*, 363 N.E.2d 1018 (Ind. Ct. App. 1977), the State brought an action to condemn approximately twenty-six acres of quarry land to build a highway. After the jury returned a verdict of nearly half a million dollars, awarding damages to both the owner landlords and the tenants operating the quarry business on the land, the State appealed asserting, *inter alia*, that the trial court had erred by excluding its instruction that would have directed the jury not to consider "business profits or volume as evidence of the value of the land or any interest thereon." *Id.* at 1026. Finding that the trial court rightfully excluded the instruction, the appellate court explained:

> Plaintiff's Tendered Instruction No. 1 is incorrect in that it instructs the jury not to consider business profits as an element which contributes to the value of the land. However, as it was pointed out above, where income is produced by the sale of minerals or other soil materials which are an intrinsic part of the land, then the capitalization of business profits may be proper. Therefore those profits may be considered by the jury to the extent that they reflect upon the value of the land at the time of the taking.

*Id.*[3]

In an unnecessarily long and convoluted analysis, the majority eventually recognizes this exception to the general rule, stating that where property being condemned was generating income, such as when minerals are being extracted, that "income may be considered in a condemnation proceeding[.]" Maj. Op. at 20. Accordingly, the majority holds in syllabus point two of the opinion that "the amount of raw profit lost from a business operated either on the condemned real estate or its residue may not be the *sole* basis to establish just compensation." (emphasis added). By using the word "*sole,*" the majority recognizes that profits may be considered in determining the amount of an award of just compensation. In fact, the majority further holds in syllabus point three that "an expert witness's assessment of the income stream that real property produces may be relied upon to support a fair market valuation of an interest in real estate."

Although the majority clearly acknowledges that lost profit may be considered in determining the fair market value of condemned property when the profit is derived directly out of the land itself, it nonetheless finds the trial court committed reversible error

---

[3]*See also Whitney Benefits,* 18 Ct.Cl. at 409 (explaining that value of coal reserves can only be measured by its ability to produce income); *Foster v. United States*, 2 Cl.Ct. 426, 448-49 (1983) (recognizing an operator's interest is separate right to produce and sell minerals which is measured by estimate of what can be earned by exercise of that right).

by refusing to give the State's proposed instruction that would have directed the jury to "*not consider any lost profit*." The majority reasons that the instruction should have been given because Beacon's owner, Jason Svonavec, testified he believed that the fair market value of Beacon's lease which allowed it to extract and sell the coal, was eighty-four million dollars. Mr. Svonavec testified that he arrived at this figure by calculating how much profit Beacon would have earned had it been able to extract and sell all of the mineable coal. The majority concludes that because Mr. Svonavec's opinion was only based on lost profit, the instruction would have alerted the jury that it could not consider lost profit alone in making its just compensation determination. Slip Op. at 40. The fallacy in the majority's reasoning is two-fold.

First, this Court has "long recognized the admissibility of a landowner's opinion concerning the value of his land." *West Virginia Dept. of Highways v. Sickles*, 161 W.Va. 409, 411, 242 S.E.2d 567, 570 (1978), *overruled on other grounds by West Virginia Dept. of Highways v. Brumfield*, 170 W.Va. 677, 295 S.E.2d 917 (1982). While the majority pays lip service to this basic principle of eminent domain law, it concludes that Mr. Svonavec's opinion was somehow improper because it was based only upon his lost business profit. Considering the fact that Beacon's only interest in the subject property was its right to mine and sell the coal by virtue of its coal lease, I am uncertain as to what the majority thinks Mr. Svonavec should have used as the basis for his opinion concerning the value of

5

Beacon's interest in the property. Undoubtedly, from Mr. Svonvec's perspective, forcing Beacon to halt its mining operation caused Beacon to lose eighty-four millions dollars, the value of the coal Beacon would have been able to extract and sell. In that regard, Mr. Svonavec's calculation was based on Beacon's existing contract to sell the coal it was mining at the date of the taking. Thus, there was no speculation involved in his valuation. For the majority to conclude that Mr. Svonavec's opinion as to the value of Beacon's interest in the property was "grossly inflated" and therefore improper is absurd.

Secondly, by focusing only upon Mr. Svonavec's testimony and opinion as to the value of the subject property, the majority conveniently overlooks the fact that Beacon's expert, Douglas C. Wise, a certified general real estate appraiser, used the lost profit in calculating and arriving at his opinion regarding the fair market value of the property.[4] Had the jury been given the instruction proposed by the State, it would have been directed to ignore not only Mr. Svonavec's opinion, but that of Mr. Wise as well. Such a result would be contrary to the new law created in syllabus point three of the majority opinion, which allows lost profit to be considered when the income capitalization approach is used to calculate the fair market value.

---

[4]Using the income capitalization approach to valuation, Mr. Wise opined that the fair market value of Beacon's leasehold interest in the subject property was $48,088,000.00. Obviously, the jury did not find the opinion of Mr. Wise or that of Mr. Svonavec persuasive as the amount of the verdict was substantially less.

6

It is clear the majority decided to grant a new trial in this matter because it believes the State was ill-prepared and should have done a better job to "protect[] millions of dollars in the public fisc." Maj. Op. at 43. Characterizing the trial as "an appalling train wreck," the majority proceeds to point out multiple errors made by counsel for the State and give direction with regard to the proper course of action upon the retrial of this matter. *Id.* While I will agree that the record evidences a lack of preparation on the part of the State, it is not this Court's place to instruct counsel regarding the best way to present a case to the jury. As we recently explained:

> It is a deeply rooted and fundamental law that "this Court is not authorized to issue advisory opinions[.]" *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden, J., dissenting). In this regard, we observed in *Harshbarger v. Gainer*, 184 W.Va. 656, 659, 403 S.E.2d 399, 402 (1991), that "[s]ince President Washington, in 1793, sought and was refused legal advice from the Justices of the United States Supreme Court, courts-state and federal-have continuously maintained that they will not give 'advisory opinions.'" Moreover, in *United Fuel Gas Co. v. Public Service Commission*, 73 W.Va. 571, 578, 80 S.E. 931, 934 (1914), we noted that "[b]y the plain terms of the Constitution appellate jurisdiction is limited to controversies arising in judicial proceedings[.]" This Court further addressed the issue of advisory opinions in *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943), as follows:
>
> > Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

7

*State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 234 W.Va. 238, —,764 S.E.2d 769, 777 (2014).

Like the majority, I was decidedly unimpressed with the manner in which the State presented its case at trial. However, I simply do not believe that the assigned errors warranted giving the State a second bite at the apple. In fact, I would not be surprised if, upon retrial, a new jury, properly instructed on the role of lost profit, awards Beacon just compensation in an amount substantially greater than the verdict that is the subject of this appeal.

For the reasons set forth above, I respectfully dissent from the majority's decision in this case.